**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

YOUBYOUNG PARK,

      Plaintiff-Appellant,

v.

ADAM GAITAN, in his individual
capacity; JOHN DYKES; JOHN
BARRICKLOW,

      Defendants-Appellees.

No. 15-2020
(D.C. No. 1:11-CV-00987-KG-CG)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLMES**, and **MATHESON**, Circuit Judges.

Plaintiff-Appellant Youbyoung Park ("Mr. Park") filed this 42 U.S.C.

§ 1983 action against Officers Adam Gaitan ("Officer Gaitan"), John Dykes

("Officer Dykes"), and John Barricklow ("Officer Barricklow")—collectively,

"Defendants"—alleging that Defendants' execution of a search warrant at Mr.

Park's self-service laundry facility and subsequent seizure of surveillance

equipment violated his federal constitutional and state-law rights.  Defendants

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

moved for summary judgment, asserting their entitlement to qualified immunity on Mr. Park's § 1983 claims, and to a favorable judgment on the merits of Mr. Park's state-law claims. The district court entered summary judgment in Defendants' favor, and Mr. Park appeals. Exercising our jurisdiction under 28 U.S.C. § 1291, we **affirm** in part and **reverse** and **remand** in part.

# I

## A[1]

On November 3, 2010, Officer Gaitan, a detective at the Bernalillo County Sheriff's Office ("BCSO") in New Mexico, visited Mr. Park's self-service laundry facility while investigating a recent stabbing incident at a nearby establishment. Although Mr. Park and his business had no involvement in the stabbing, Officer Gaitan believed that surveillance video recordings from the laundry facility might

---

[1] In reviewing the grant of summary judgment on qualified-immunity grounds, as explained *infra*, we "'usually' must 'adopt[] . . . the plaintiff's version of the facts,'" *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)), unless "blatantly contradicted by the [underlying] record," *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)). Accordingly, we cannot adopt a party's version of the facts in the face of "clear contrary video evidence." *Thomas*, 607 F.3d at 659. In this case, there is a relevant video recording, without accompanying audio, that captures key elements of Mr. Park's interactions with Defendants. "We rely on that video evidence here, while acknowledging that it did not capture everything," *id.*—notably, the audio portion of the parties' encounters, *see Clark v. Bowcutt*, --- F. App'x ----, 2017 WL 56283, at *5 (10th Cir. 2017) (citing *Thomas*, and considering video evidence); *Valencia v. De Luca*, 612 F. App'x 512, 514 (10th Cir. 2015) (same), *cert. denied*, 136 S. Ct. 546 (2015). "Therefore, in addition to relying on the video we also continue to view the evidence in the light most favorable to" Mr. Park. *Thomas*, 607 F.3d at 659.

confirm or refute a suspect's claimed alibi. Accordingly, Officer Gaitan entered Mr. Park's business in plain clothes, displayed his badge and gun, and asked Mr. Park to show him the surveillance video. Mr. Park—who was born in Korea and has limited English skills—did not recognize Officer Gaitan as a law enforcement officer and believed he had come to inquire about some unknown "accident"; consequently, he refused to reveal the video recordings to Officer Gaitan, whom he believed was non-police personnel. Aplt.'s App. at 153–54 (Park Dep., dated Oct. 9, 2013). Following his refusal, Officer Gaitan warned Mr. Park that he would go to jail if he failed to produce the video, but Mr. Park said nothing. Officer Gaitan then handed Mr. Park the following note: "If you are unwilling to assist me with my investigation I <u>will</u> get a search warrant for your property," Aplt.'s App. at 166 (capitalization altered), and left the laundry facility.

On the same afternoon (i.e., November 3), dressed in plain clothes, Officer Gaitan returned to Mr. Park's business with a search warrant for the surveillance video footage and recording equipment; he was accompanied by three plain-clothed BCSO detectives and two uniformed officers—Officers Dykes and Barricklow. When the officers entered the business, they found Mr. Park seated behind his counter. Officer Gaitan approached the counter, and briefly displayed

3

his badge and gun, and a piece of paper. From there, the parties present vastly divergent accounts of the ensuing moments immediately before Mr. Park's arrest.[2]

Under Mr. Park's version of events, Defendants approached him without explaining the purpose for the encounter, and without providing a copy of the search warrant or an opportunity to review its contents. Indeed, Defendants confronted him without uttering "any orders" or "say[ing] anything." Aplt.'s App. at 151, 175 (Park Dec., dated Dec. 23, 2012). While this encounter was taking place, Mr. Park displayed no observable signs of resistance, nor did he obstruct the officers' access to the video equipment. Nevertheless, after a few seconds of Mr. Park's silence, Officer Gaitan directed Officer Dykes to "pull [him] out" from behind the counter. *Id.* at 151. Officer Gaitan and Officer Dykes then lifted Mr. Park out of his chair, held him by the arms, and forcibly escorted

---

[2] Mr. Park contends, on the one hand, that Defendants seized him abruptly without "say[ing] anything," Aplt.'s App. at 151, without "a reasonable opportunity to understand their purpose for approaching him," Aplt.'s Opening Br. at 48, and "without . . . offer[ing] an interpreter or the opportunity to read the warrant," *id.* at 10. Officer Gaitan claims, by contrast, that he "approached Mr. Park, told him that [he] had obtained a search warrant to view the video" and asked Mr. Park to facilitate his inquiry—specifically, telling Mr. Park that he wanted "to look at it [i.e., the video recording]"; but, he submits, Mr. Park "refused to comply." Aplt.'s App. at 67 (Gaitan Dep., dated Oct. 16, 2012). Although the video evidence captures the encounter, we have no accompanying audio to independently review any conversation between Mr. Park and Officer Gaitan. The visual depiction reveals no blatant contradiction of Mr. Park's account. Accordingly, we adopt, as we must, Mr. Park's version of events, and decline to accept Officer Gaitan's competing factual account.

4

him toward the building's exit. Initially, Mr. Park offered no resistance to the officers' use of force.

As they approached the exit, however, Mr. Park began to tense his arms, brace his legs, and attempt to pull away from the officers. In light of these actions, Officer Gaitan forcibly took Mr. Park to the ground by giving "him a knee strike to the side of his body." Aplt.'s App. at 171. Once in a "face down stabilization position," they "handcuffed him," escorted him from the premises, and placed him in a patrol car. *Id.*

With Mr. Park in custody, one of the BCSO officers, Detective Kyle Hartsock ("Detective Hartsock"), began reviewing the contents of Mr. Park's saved video recordings. Detective Hartsock quickly determined, however, that the relevant recording had already been deleted or overwritten to make room for more recent recordings. As a result, Detective Hartsock decided to take the video equipment and Mr. Park's connected laptop back to the computer-forensics laboratory to determine if he could recover the relevant footage. After concluding the search, Officer Dykes and Officer Barricklow transported Mr. Park to the South Valley BCSO Substation, and charged him with the misdemeanor offense of resisting an officer.

During the pendency of the criminal charges, Mr. Park's defense counsel sought discovery concerning the evidence against him, including any recordings from the seized video equipment. The State of New Mexico ("State"), however,

5

never provided responsive materials, and Officer Gaitan ultimately requested dismissal of the misdemeanor charge and the state court acceded to his request. In the meantime, Detective Hartsock informed Officer Gaitan that he could not extract any additional recordings from the video equipment. At that point, Officer Gaitan "believed that the equipment and its contents had no evidentiary value" and he deposited the DVR and laptop in the Albuquerque Police Department Evidence Room. Aplt.'s App. at 250 (Gaitan Aff., dated July 26, 2013). Officer Gaitan then closed the stabbing investigation "pending further information"—and "could have [immediately] released" the seized video-related items to Mr. Park—but he "honestly forgot," despite his responsibility to return the seized property as the affiant on the search warrant. Aplt.'s App. at 19–20. As a result, Mr. Park did not receive the items until December of 2012, when the district court in the present case ordered their return.

**B**

On November 4, 2011, Mr. Park filed the underlying civil action against Defendants, asserting constitutional claims for unlawful seizure and excessive force in violation of the Fourth Amendment, and tort claims under New Mexico law for assault, battery, false arrest, and false imprisonment. On December 7, 2012, Defendants moved for summary judgment on all of Mr. Park's claims. Citing newly discovery evidence, however, Mr. Park moved to amend his complaint on December 24, 2012, in order to assert a First Amendment claim

6

against Officer Gaitan.  The district court permitted the amendment on February 11, 2013, and Mr. Park filed his amended complaint on the same day.  Officer Gaitan then filed an additional summary-judgment motion on Mr. Park's newly asserted First Amendment claim.

The district court resolved the summary-judgment motions in two separate decisions.  First, on March 31, 2014, the district court granted Defendants' summary-judgment motion with respect to (1) Mr. Park's Fourth Amendment unlawful seizure and excessive force claims, notably finding that Mr. Park had failed to establish that his constitutional rights were violated, and (2) his related state-law tort claims.  An order was entered in connection with this March 31 decision (the "initial summary-judgment decision"), styled "Partial Dismissal and Partial Summary Judgment."  Aplt.'s App. at 343 (capitalization altered) (Partial Dismissal and Partial Summ. J., filed Mar. 31, 2014).  On January 6, 2015, the district court then granted Officer Gaitan's summary-judgment motion on Mr. Park's First Amendment claims (the "final summary-judgment decision"), concluding again that Mr. Park had failed to demonstrate a constitutional violation.  Accompanying this decision was a document styled, "Final Summary Judgment," stating that "this case is now terminated."  *Id.* at 353 (capitalization altered) (Final Summ. J., filed Jan. 6, 2015).

In the aftermath of those decisions, on February 4, 2015, Mr. Park filed a notice of appeal "from the Final Summary Judgment . . . entered . . . on January

7

6, 2015, and all interlocutory rulings adverse to Plaintiff, including the document entitled 'Partial Dismissal and Partial Summary Judgment' . . . filed March 31, 2014." *Id.* at 354.

## II

Prior to reaching the merits, we first address Defendants' contention that we lack jurisdiction over the district court's initial summary-judgment decision. Specifically, Defendants submit that the district court's March 31, 2014, "Partial Summary Judgment" qualified as a final judgment for purposes of appeal, rendering Mr. Park's notice of appeal—filed nearly one year later—untimely relative to those claims. However, because the initial summary-judgment decision constituted a non-appealable interlocutory order, we conclude that our appellate jurisdiction extends to all claims that Mr. Park raises on appeal.

Federal circuit courts have jurisdiction to review only "final decisions" of district courts. 28 U.S.C. § 1291. Generally, "[a] final decision must dispose of all claims by all parties." *New Mexico v. Trujillo*, 813 F.3d 1308, 1316 (10th Cir. 2016). Federal Rule of Civil Procedure 54, however, allows a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court *expressly determines* that there is no just reason for delay." Fed. R. Civ. P. 54(b) (emphasis added). As we recently explained,

> the "expressly determines" language of the rule . . . require[s] district courts to make two explicit determinations in the certification order. *First*, the district court must determine the

8

judgment is final.  *Second*, it must determine there is no just reason for delay of entry of its judgment.  In doing so, district courts should "clearly articulate their reasons and make careful statements based on the record supporting their determination of 'finality' and 'no just reason for delay' so that we can review a 54(b) order more intelligently and thus avoid jurisdictional remands."

*Trujillo*, 813 F.3d at 1316 (emphases added) (citations omitted) (quoting

*Stockman's Water Co. v. Vaca Partners*, 425 F.3d 1263, 1265 (10th Cir. 2005)).

Despite Defendants' contention that the initial summary-judgment decision qualified as a final judgment, this decision fails to contain *any* of the requisite language, and no party requested a Rule 54(b) certification.[3]  Accordingly, we conclude that the initial summary-judgment decision constituted a non-appealable interlocutory order, which merged into the final judgment terminating the district

---

[3]     Defendants' suggestion that a judgment dismissing fewer than all claims may be construed as a final judgment under Rule 54(b) in the absence of language stating that there is no just reason for delay is misguided.  *See* Fed. R. Civ. P. 54(b) (requiring that "the court *expressly* determine[] that there is no just reason for delay" (emphasis added)); *Stockman's Water Co.*, 425 F.3d at 1266 (discerning no jurisdiction where the order at issue "fail[ed] to comport with Rule 54(b)'s requirement that a final judgment be entered only upon an express determination that there is no just reason for delay").  While, as Defendants note, the Fifth Circuit has held that an order may still be appealable under Rule 54(b) even where a district court fails "to mechanically recite the words 'no just reason for delay,'" such an order must otherwise "reflect[] the trial judge's clear intent to enter a partial final judgment under Rule 54(b)."  *Kelly v. Lee's Old Fashioned Hamburgers, Inc. (Lee's Old Fashioned Hamburgers of New Orleans, Inc.)*, 908 F.2d 1218, 1220 (5th Cir. 1990).  Even if we could deviate from our own precedent and follow the Fifth Circuit's lead (which of course we cannot do), the order here contains no indication that the district court intended to enter partial *final* judgment, as envisioned by Rule 54(b).  Therefore, the order would not be final even under the Fifth Circuit's standard.

court case. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) (concluding that "an earlier interlocutory order . . . merged into the final judgment," allowing appellate jurisdiction over the earlier order). Importantly, Mr. Park timely filed a notice of appeal as to that final judgment, entered on January 6, 2015; accordingly, that appeal provides the basis for our jurisdiction, not only with respect to the final summary-judgment decision, but also as to the initial summary judgment decision, which merged into the final judgment. In other words, we properly exercise jurisdiction over all of Mr. Park's claims.

### III

Turning to the merits, Mr. Park argues that the district court improperly granted summary judgment to the Defendants on his § 1983 claims for violations of the Fourth and First Amendments, and on his state-law claims. The district court found, as detailed *supra*, that Defendants were entitled to qualified immunity on Mr. Park's § 1983 claims, and to a favorable judgment on the merits as to Mr. Park's state-law claims. Reviewing each claim in turn, we conclude (1) that Defendants are entitled to qualified immunity on Mr. Park's Fourth Amendment unlawful seizure and excessive force claims and on his First Amendment claim; (2) that the district court erred in entering summary judgment in Defendants' favor on Mr. Park's false arrest and false imprisonment claims;

10

and (3) that the district court appropriately entered summary judgment in Defendants' favor on Mr. Park's assault and battery claims.

## A

"We review grants of summary judgment based on qualified immunity de novo."[4] *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 881 (2014). At the summary judgment stage, the court may not weigh evidence and must resolve genuine disputes of material fact in favor of the nonmoving party. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866 (2014) (per curiam).

However, when a defendant raises the qualified-immunity defense, the plaintiff bears the burden of demonstrating "(1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). We may address the two prongs of the qualified-immunity standard in either order; "if the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016).

---

[4] Because we review summary-judgment determinations de novo, "we need not separately address [Mr. Park's] argument that the district court erred by viewing evidence in the light most favorable to [Defendants]." *Rivera v. City and Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

On appeal, Mr. Park challenges Defendants' entitlement to qualified immunity on his Fourth Amendment claims of unlawful seizure and excessive force and on his First Amendment claims. We address each claim in turn.

**1**

**a**

An officer violates a plaintiff's Fourth Amendment right to be free from unlawful seizure when the officer effectuates "a highly intrusive or lengthy [warrantless] search or detention" without "probable cause to believe that a criminal offense has been or is being committed." *Quinn*, 780 F.3d at 1006 (first quoting *United States v. Villagrana–Flores*, 467 F.3d 1269, 1273 (10th Cir. 2006); then quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008)). "Consequently, in a § 1983 action based on a warrantless arrest, the defendant may be entitled to qualified immunity if he had probable cause to arrest the plaintiff." *Id.*

"We assess probable cause under an objective standard of reasonableness," *id.*, asking "whether the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed,'" *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (quoting *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001)). "Our determination on this score is an independent and objective one,"

12

meaning that "an officer's own subjective reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime." *Id.*

Where a defendant's claim of probable cause rests on a state criminal statute, as it does here, "the precise scope of [the federal constitutional right] uniquely depends on the contours of a state's substantive criminal law." *Kaufman v. Higgs*, 697 F.3d 1297, 1300–01 (10th Cir. 2012). Accordingly, we look to the state's highest court "when inquiring whether the [d]efendants' interpretation of the [relevant criminal] statute was one that a reasonable officer would have held at the time of [the] arrest." *Id.* at 1301. If, however, "a state Supreme Court has not spoken on the question at issue, we assume (without deciding) that a reasonable officer would seek guidance regarding the scope of proper conduct at least in part from any on-point decisions of the state's intermediate court of appeals." *A.M.*, 830 F.3d at 1140–41; *cf. Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1297 (10th Cir. 2010) (noting in a civil diversity case that "[t]he decision of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (alteration in original) (quoting *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007))).

Applying these principles, our inquiry narrowly focuses on (1) whether Defendants had probable cause to arrest[5] Mr. Park for violating New Mexico Statute Annotated § 30-22-1 (1978) ("Section 30-22-1")—specifically, subsection (A) of that statute—by resisting, evading, or obstructing an officer;[6] and, if not, (2) whether clearly established law as of November 2010 made the illegality of that arrest indisputable. *See Quinn*, 780 F.3d at 1007. Contrary to the district court, we conclude that Defendants lacked probable cause to arrest Mr. Park under Section 30-22-1(A), but we nevertheless affirm the court's judgment on the alternative ground that Mr. Park failed to demonstrate that clearly established law squarely condemned Defendants' conduct at the time of Mr. Park's arrest in November 2010. *See, e.g.*, *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1157 (10th Cir. 2015) (noting that "we may affirm the judgment on any ground supported by the record"), *cert dismissed*, 136 S. Ct. 499 (2015); *accord A.M.*, 830 F.3d at 1157.

---

[5] It is undisputed for purposes of this appeal that Defendants seized Mr. Park within the meaning of the Fourth Amendment when Officer Gaitan and Officer Dykes removed him from his seat.

[6] The narrow focus of our inquiry makes this case distinguishable from cases like *Denver Justice & Peace Committee, Inc. v. City of Golden*, 405 F.3d 923 (10th Cir. 2005), which Mr. Park cites, which concerned officers' authority to conduct a "suspicionless pat-down frisk" of persons "present during the execution of a search warrant," *id.* at 927, 932, which implicated a question of the existence of "reasonable, individualized suspicion" for the detention, *id.* at 932, not (as here) the existence of probable cause for an arrest.

**b**

Section 30-22-1(A)—the provision cited by Defendants as the basis for their probable-cause determination—provides that, "[whoever] knowingly obstruct[s], resist[s] or oppos[es] any officer of [the state of New Mexico] or any other duly authorized person serving or attempting to serve or execute any process or any rule or order of any of the courts of [the] state or any other judicial writ or process" commits the misdemeanor offense of "[r]esisting, evading or obstructing an officer."  N.M. Stat. Ann § 30-22-1(A).  Section 30-22-1(A) is one provision of a multi-pronged statute that generally criminalizes "[r]esisting, evading or obstructing an officer."  *Id.*  Under that larger scheme, "[r]esisting, evading or obstructing an officer consists of:"

> A. *knowingly obstructing, resisting or opposing any officer of this state or any other duly authorized person serving or attempting to serve or execute any process or any rule or order of any of the courts of this state or any other judicial writ or process*;
>
> B. intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him;
>
> C. willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle; or
>
> D. resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.

15

N.M. Stat. Ann. § 30-22-1(A)–(D) (emphases added) (the "resisting statute").

In interpreting the phrase "[r]esisting, evading, or obstructing an officer," New Mexico courts have emphasized that the statutory phrase envisions "primarily . . . physical acts of resistance." *State v. Wade,* 667 P.2d 459, 460 (N.M. Ct. App. 1983) (quoting N.M. Stat. Ann. § 30-22-1); *accord State v. Prince*, 972 P.2d 859, 863 (N.M. Ct. App. 1998) (quoting *Wade*, and reaffirming the same definition). Borrowing from *Wade*, we have similarly concluded that, "[u]nder New Mexico law, '[r]esisting, evading, or obstructing an officer primarily consists of physical acts of resistance.'" *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) (second alteration in original) (quoting *Wade*, 667 P.2d at 460). In this case, however, Mr. Park displayed *no* physical acts of resistance prior to seizure, and Defendants seem to acknowledge that this *principal* interpretation of the statute does not provide them with a basis for probable cause.

Rather, citing New Mexico authority construing *different* portions of the resisting statute, Defendants advance an additional interpretation—namely, that "failing to comply with an officer's lawful demand" constitutes resisting an officer. Aplees.' Response Br. at 44 (citing *City of Espanola v. Archuleta*, No. 28,620, 2010 WL 3997984 (N.M. Ct. App. Feb. 5, 2010) (unpublished)). On this point, Defendants' contention finds some support in decisions of the New Mexico Court of Appeals and our own court.

16

Indeed, in *State v. Diaz*, the New Mexico Court of Appeals defined "resisting," as used in Section 30-22-1(D), to refer to a defendant's overt physical act *or* a defendant's refusal to obey *lawful* police commands. 908 P.2d 258, 259–62 (N.M. Ct. App. 1995); *accord Archuleta*, 2010 WL 3997984 (summarizing and applying *Diaz*'s holding).[7] Similarly, in *City of Roswell v. Smith*, the New Mexico Court of Appeals construed "resisting," as used in Roswell, N.M. Code Section 10-48(a)(2), which mirrors Section 30-22-1(D),[8] to include a defendant's failure to follow an officer's *lawful* instructions. 133 P.3d 271, 272–73 (N.M. Ct. App. 2006).

In light of these decisions, we have found an arrest "justified" under *various* provisions of the resisting statute where the defendant has refused to comply with an officer's command, but *only* under circumstances where the command precipitating the arrest was "actually lawful." *Storey v. Taylor*, 696

---

[7]     *Archuleta* is an unpublished memorandum opinion of the New Mexico Court of Appeals. Although such opinions have "no precedential value," *Gormley v. Coca-Cola Enters.*, 85 P.3d 252, 255 (N.M. Ct. App. 2003); *accord* N.M. R. App. P. 12-405(A) (explaining the limitations of "[n]on-precedential dispositions" by memorandum opinion), they may be cited in New Mexico courts "for any persuasive value," N.M. R. App. P. 12-405(A). Applying these principles, we find *Archuleta* persuasive to the extent it recognizes the *Diaz* holding, which is equally reflected in our own precedent.

[8]     "Section 10–48(a)(2) prohibits obstructing an officer, which it defines as '[r]esisting, obstructing or abusing any . . . peace officer in the lawful discharge of his duties.'" *Smith*, 133 P.3d at 272.

17

F.3d 987, 993 n.6 (10th Cir. 2012); *accord Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012).

In *Storey*, for example, we considered whether a New Mexico police officer had probable cause to arrest Mr. Storey after he "disobeyed [an officer's] order to step out of [his] house" during an investigation into an anonymous report of a domestic disturbance. 696 F.3d at 990–91, 993. Given the warrantless nature of the inquiry, however, we concluded that "[the officer] had no [lawful] basis on which to order [Mr.] Storey out of his [own] house." *Id.* at 993. Accordingly, we held that "[Mr.] Storey's refusal to obey [the unlawful order] could not [by itself] justify his arrest" under Section 30-22-1(D). *Id.* at 994.

Analogously, in *Romero*, officers knocked on Mr. Romero's door to investigate reports of vandalism. *See* 672 F.3d at 883–84. Although Mr. Romero initially compiled with their requests, "not understanding why law enforcement knocked on [his] door, [he ultimately] turned back toward the apartment and proceeded one or two steps." *Id.* at 883. The officers "grabbed [Mr. Romero] to prevent [his] entry into the apartment" and arrested him based on the "flight" and "evasion" provisions of Section 30-22-1(B). *Id.* However, because the officers lacked "reasonable suspicion or probable cause" to "detain [Mr. Romero] for the vandalism," we concluded that the officers had no lawful basis "to force [him] to speak" and thus no grounds to justify his arrest under Section 30-22-1(B). *Id.* at 889.

18

For our analytical purposes, it is important to underscore at the outset that

*Diaz*, *Archuleta, Smith*, *Storey*, and *Romero* addressed Sections 30-22-1(B) and

(D) (or an analogous municipal provision), *not* Section 30-22-1(A), the provision

at issue here; therefore, these cases do not directly control our interpretation of

the latter provision.  But we acknowledge that an essential premise of those

decisions—*viz.*, "[r]esisting" includes disobedience to a lawful police

command—lends persuasive support to Defendants' understanding of Section 30-

22-1(A).  That is particularly true because the term "resisting" appears in the

prefatory portion of the resisting statute; that prefatory language clarifies that the

statutory subsections that follow indicate what, *inter alia*, "resisting" "consists

of."  *And* the term also appears not only in subsection (D), but also in the specific

subsection at issue here, subsection (A).  Therefore, one can reasonably infer that

the New Mexico legislature intended "resisting" to have a uniform meaning

throughout the resisting statute.  *Compare Sorenson v. Sec'y of Treasury*, 475

U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that

'identical words used in different parts of the same act are intended to have the

same meaning.'" (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84,

87 (1934))), *and First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d

689, 697 (10th Cir. 2014) (same), *with State v. Jade G.*, 154 P.3d 659, 667 (N.M.

2007) (applying the same principle of statutory interpretation under New Mexico

law).  Nevertheless, even if we assume, without deciding, that the failure to

19

follow a lawful police command constitutes a viable theory of "[r]esisting" under Section 30-22-1(A), Defendants' argument based on such a theory would still fail.

Importantly, Defendants' argument tacitly requires us to accept their view of the facts—*viz.*, that Officer Gaitan advised Mr. Park that he had a search warrant to review the video footage, *and* asked (or demanded) that Mr. Park help him access the video. As explained *supra*, however, our legal framework in this context requires us to reject Defendants' version of events, in favor of Mr. Park's account that (1) Defendants approached him without explaining the purpose for the encounter, (2) without providing a copy of the search warrant or an opportunity to review its contents, and (3) without issuing any orders or commands. Viewed that way, the record provides no factual basis to apply Defendants' lawful-order theory of criminal conduct to Mr. Park. In other words, accepting Mr. Park's version of the facts, Defendants never gave him an order—lawful or otherwise. Thus, even if we concluded that the failure to follow a lawful order constitutes a violation of Section 30-22-1(A) (despite the paucity of authority on that *specific* question), Defendants have not demonstrated probable cause under that theory.

Lastly, Defendants also seek to bolster their assertion of probable cause with an unpublished decision of our court, *Boydston v. Isom*, 224 F. App'x 810 (10th Cir. 2007). Putting aside the fact that *Boydston* is not precedential, and therefore not controlling here, it does not help Defendants. A car dealer, the

20

*Boydston* plaintiff was arrested for denying the request of New Mexico police officers "to review the [temporary tag] records relating to the sale of a vehicle" to a customer. *Id.* at 812. We analyzed whether the officers had probable cause to arrest the plaintiff under Section 30-22-1(D), and New Mexico Statute Annotated § 66-4-5(E) ("Section 66-4-5(E)"), which requires auto dealers to permit law enforcement officers to inspect temporary tag records, *id.* at 815 & n.3, and concluded that they did, *id.* at 815–817. In doing so, we generally observed, "[w]ith respect to each charge, the same facts demonstrate that a reasonable officer would have probable cause to believe [the plaintiff] violated New Mexico law." *Id.* at 815. We stated in this regard: "It is undisputed that Defendants went to [the plaintiff's auto store] during normal business hours and requested of [the plaintiff] that they be allowed access to the records, as permitted by [Section 66-4-5(E)]. It is also undisputed that [the plaintiff] denied Defendants access to the records." *Id.*

*Boydston* is distinguishable and cannot advance Defendants' cause. First of all, even if we assume as we did *supra* that cases construing the probable-cause requirements for an arrest under Section 30-22-1(D) are applicable in the context of an arrest (as here) under Section 30-22-1(A), Defendant's reliance on *Boydston* confronts the same insurmountable, factual obstacle as the other decisions that they cite: that is, accepting the facts as Mr. Park would have them, Defendants never asked (i.e., ordered) Mr. Park to provide them with the video recording.

21

Accordingly, unlike the *Boydston* plaintiff, Mr. Park cannot be said to have violated the resisting statute by refusing a lawful police request for access to certain information. And, second, our analysis in *Boydston* of the plaintiff's arrest under Section 66–4–5(E)—a provision of an entirely different statutory scheme than the one at issue here—is inapposite. Indeed, under that statute, the *Boydston* plaintiff had an affirmative obligation to provide the police officers upon request with access to the kind of records that they sought. *See Boydston*, 224 F. App'x at 815. However, there is no analogous language in Section 30-22-1(A), and, in any event, Defendants did not make a request for the video recording (under Mr. Park's version of the facts) that might have triggered any such purported affirmative obligation. Accordingly, Defendants' reliance on *Boydston* is unavailing.[9]

---

[9] Even if we could properly accept the idea (which we cannot) that Officer Gaitan issued an order, demanding that Mr. Park provide him with access to the video recording, Defendants have not demonstrated that they could prevail. Specifically, the relevant caselaw discussed *supra* does not proscribe failure to follow just *any* order from a police officer; rather, the order must be a *lawful* one. *See, e.g.*, *Diaz*, 908 P.2d at 259–62; *Smith*, 133 P.3d at 272–73; *Storey*, 696 F.3d at 994; *Romero*, 672 F.3d at 889. Applying these principles here, Defendants provide no support for the notion that Officer Gaitan's purported order was lawful or that, consequently, Mr. Park was legally obliged to facilitate Defendants' access to the video recording and other items identified in the search warrant. Indeed, the search warrant possessed by Officer Gaitan imposed *no* obligations on the property owner. *Cf. Boydston*, 224 F. App'x at 815 (addressing a statute that imposed an affirmative obligation on auto dealers to provide the police officers upon request with access to temporary tag records). To the contrary, the search warrant "COMMANDED" *Officer Gaitan* to "serv[e] [the] warrant and [a] copy of the" supporting affidavit, "to search . . . the business . . . for the [video tape],"

(continued...)

22

For all of the foregoing reasons, we conclude that Defendants lacked probable cause to arrest Mr. Park for violating Section 30-22-1(A).

**c**

Despite our probable-cause conclusion, we still must consider whether clearly established law, at the time of Mr. Park's arrest, would have made the illegality of his arrest indisputable. On this issue, we recently explained,

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, "existing precedent must have placed the statutory or constitutional question 'beyond debate.'" "The dispositive question is 'whether the violative nature of the *particular conduct* is clearly established.'" In the Fourth Amendment context, "the result depends very much on the facts of each case," and the precedents must "squarely govern" the present case.

---

[9](...continued)
and "to seize it." Aplt.'s App. at 116. In this regard, New Mexico Rule 5-211—which "codifies the procedural requirements for issuance and execution of a search warrant in New Mexico," *State v. Malloy*, 34 P.3d 611, 614 (N.M. Ct. App. 2001), imposed on *Officer Gaitan* the obligation to show Mr. Park the search warrant *and* affidavit to provide him with adequate "assurance and notice during the search," *State v. Boyse*, 303 P.3d 830, 835 (N.M. 2013) (quoting *Malloy*, 34 P.3d at 614). However, the videotape clearly indicates that Officer Gaitan failed to furnish the search warrant and affidavit to Mr. Park prior to his arrest (irrespective of whether, as Officer Gaitan maintains, he actually showed the search warrant to Mr. Park), and Officer Gaitan has not testified to the contrary, *see* Aplt.'s App. at 67. Therefore, even under a set of facts *more favorable* to Defendants—where Officer Gaitan issued an order to Mr. Park to assist Defendants in retrieving the surveillance video pursuant to a lawful search warrant—Defendants have not demonstrated that they could prevail; that is, they have not shown that they possessed probable cause to arrest Mr. Park under Section 30-22-1(A) for failure to comply with a *lawful* order.

23

> "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"

*Aldaba v. Pickens (Aldaba II)*, 844 F.3d 870, 877 (10th Cir. 2016) (alteration in original) (citations omitted) (quoting *Mullenix v. Luna*, --- U.S. ----, 136 S. Ct. 305, 308, 309 (2015) (per curiam)); *see also Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) ("The law is also clearly established if the conduct is so obviously improper that any reasonable officer would know it was illegal.").

The Supreme Court has emphasized that the clearly-established-law inquiry must be guided by "the specific context of the case," *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)), particularly "in the Fourth Amendment context, where . . . '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts,'" *id.* (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *limited on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *accord Aldaba II*, 844 F.3d at 872. Indeed, the Supreme Court recently faulted our clearly established law analysis, where we "failed to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 552 (2017) (per curiam).

"As a practical matter, we implement this [clearly established law] standard by asking whether there was 'arguable probable cause' for an arrest—if there was, a defendant is entitled to qualified immunity." *A.M.*, 830 F.3d at 1139 (alteration in original) (quoting *Kaufman*, 697 F.3d at 1300). "In other words, in the § 1983 qualified-immunity context, an officer may be mistaken about whether he possesses *actual* probable cause to effect an arrest, so long as the officer's mistake is reasonable—*viz.*, so long as he possesses 'arguable probable cause.'" *Id.* at 1140 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (en banc)).

Under this analytical rubric, Plaintiff must present controlling authority—ordinarily, caselaw from the U.S. Supreme Court or our court, or, as relevant here, New Mexico appellate courts, *see, e.g.*, *Quinn*, 780 F.3d at 1005; *Felders v. Malcom*, 755 F.3d 870, 884 (10th Cir. 2014); *Kaufman*, 697 F.3d at 1300–01—that "*squarely governs* the case," *Mullenix*, 136 S. Ct. at 309 (quoting *Brosseau*, 543 U.S. at 201); *accord Aldaba II*, 844 F.3d at 877, and that would have put "beyond debate," *al-Kidd*, 563 U.S. at 741; *accord White*, 137 S. Ct. at 551, the question of whether Defendants lacked probable cause to arrest Mr. Park for a violation of Section 30-22-1(A) under the particular facts of this case (i.e., under Mr. Park's version of the facts). We conclude that Mr. Park cannot satisfy this burden.

25

The "body of relevant caselaw" concerning any of the provisions of the resisting statute in November 2010 was (and still is) "*very* limited." *A.M.*, 830 F.3d at 1143 (emphasis added). Moreover, as explicated *supra*, far fewer cases mention, much less discuss, the *specific* provision implicated here—Section 30-22-1(A). More importantly, *no* controlling decision from the United States Supreme Court, our court, or New Mexico appellate courts "*squarely governs*" whether Defendants lacked probable cause for Mr. Park's arrest under Section 30-22-1(A), *Mullenix*, 136 S. Ct. at 309 (quoting *Brosseau*, 543 U.S. at 201); *accord Aldaba II*, 844 F.3d at 877, or places the resolution of this probable-cause question "beyond debate," *al-Kidd*, 563 U.S. at 741; *accord White*, 137 S. Ct. at 551. In particular, the cases from the relevant time period that we discussed *supra*—including *Diaz*, *Archuleta*, *Smith*, and *Boydston*—clearly do not satisfy this criteria. Though we determined that those cases do *not* support Defendants' claim that they possessed *actual* probable cause for Mr. Park's arrest, they also do not squarely condemn that arrest under the Fourth Amendment, such that we can conclude that Defendants lacked *arguable* probable cause for Mr. Park's arrest. Indeed, Defendants could have reasonably—*but mistakenly*—relied on cases like *Diaz* and its progeny, and *Boydston* to support their arrest of Mr. Park.

At bottom, Mr. Park cannot supply "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment."

26

*White*, 137 S. Ct. at 552. No decision would have "apprise[d] *every* objectively reasonable officer" that he lacked probable cause under the circumstances of this case to arrest Mr. Park. *Aldaba II*, 844 F.3d at 877 (emphasis added); *see id.* at 879 ("[Because] [w]e have found no case presenting a similar situation[,] [w]e certainly cannot say that every reasonable officer would know that the Fourth Amendment condemned [the officer's specific conduct]. No case renders a Fourth Amendment violation 'beyond debate.'"). Consequently, although we *now* conclude that Defendants lacked probable cause to arrest Mr. Park for violating Section 30-22-1(A), we cannot determine under the particular facts of this case that Mr. Park has carried his burden of demonstrating that Defendants' arrest violated clearly established law. *See, e.g.*, *Cox*, 800 F.3d at 1247 ("Significantly, [the plaintiff] has not directed our attention to any Supreme Court or Tenth Circuit decision (published or otherwise) that would indicate that this right was clearly established in 2009 . . . . Nor, for that matter, has [she] attempted to shoulder her burden by showing that 'the clearly established weight of authority from other courts . . . ha[s] found the law to be as [she] maintains.' *On this basis alone*, we could hold that [the plaintiff] has not properly laid the groundwork to defeat [the defendant's] assertion of qualified immunity." (second omission in original) (emphasis added) (footnote omitted) (citations omitted) (quoting *Becker v. Bateman*, 709 F.3d 1019, 1023 (10th Cir. 2013))); *Quinn*, 780 F.3d at 1007 ("Plaintiffs have not directed us to any clearly established law involving such

27

sting operations or an analogous law-enforcement setting, nor did the district court rely on any such law. This caselaw void is significant and ultimately determinative . . . .").  Therefore, we conclude that Defendants are entitled to qualified immunity with respect to Mr. Park's Fourth Amendment claim for unlawful seizure and affirm the district court's judgment on this alternative basis.

## 2

We next address Mr. Park's Fourth Amendment excessive-force claim.  In this claim, Mr. Park contends that Defendants used greater force than necessary to effect his arrest, by "appl[ying] a knee strike to [his] torso and forc[ing] him to the floor with their weight on top of him."  Aplt.'s Opening Br. at 51.

In *Cortez*, we recently discussed the analytical framework for analyzing "claims of both unlawful arrest and excessive force arising from a single encounter" explaining, in that scenario, that

> it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it.  If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest.  *If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force*.  These two inquiries are separate and independent, though the evidence may overlap.

*Cortez*, 478 F.3d at 1127 (emphasis added).  When "officers move for qualified immunity on an excessive force claim," the plaintiff must show "that the force

28

used was impermissible (a constitutional violation) and that objectively reasonable officers could not have . . . thought the force constitutionally permissible (violates clearly established law)." *Id.* at 1128. In this case, we focus our attention only on the first inquiry (i.e., a constitutional violation *vel non*), ultimately concluding that Mr. Park has failed to demonstrate that Defendants violated his Fourth Amendment rights by using excessive force.

In determining whether Defendants applied more force than would have been reasonably necessary (assuming, as we must, that Defendants effected a *lawful* arrest of Mr. Park), we consider the facts and circumstances confronting the officers, judging "reasonableness . . . 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1248 (10th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). For example, "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, . . . the officer would be justified in using more force than in fact was needed." *Saucier*, 533 U.S. at 205. As part of the analysis, the relevant factors "include, *but are not limited to*, '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cavanaugh*, 718 F.3d at 1249 (emphasis added) (quoting *Graham*, 490 U.S. at 396). These three factors—first identified by the Supreme Court in *Graham*—are often referred to

29

as the *Graham* factors. *See, e.g.*, *Fisher v. City of Las Cruces*, 584 F.3d 888, 894–96 (10th Cir. 2009).

The district court focused on the three *Graham* factors, finding that the first two (the severity of the crime at issue and whether Mr. Park posed a threat to Defendants' safety) favored Mr. Park, while the third heavily favored Defendants. On that factor, the district court specifically concluded that Mr. Park "actively resisted his continued arrest by physically tensing up and moving his arms in an attempt to get out of the escort hold and stay in the [l]aundromat," at which point "[Officers] Gaitan and Dykes could have reasonably believed that [Mr. Park] was likely to fight back." Aplt.'s App. at 339 (Mem. Op. & Order, filed Mar. 31, 2014). In view of those circumstances, the district court found "[Officer] Gaitan and [Officer] Dykes were justified in using more force than was actually needed to restrain [Mr. Park]." *Id.*

On appeal, Mr. Park challenges this aspect (i.e., the third factor) of the district court's *Graham*-factor analysis and claims, in any event, that the "circumstances of [this] particular case . . . require . . . consideration of additional factors" beyond those identified in *Graham*. Aplt.'s Opening Br. at 53 (quoting *Aldaba v. Pickens (Aldaba I)*, 777 F.3d 1148, 1155 (10th Cir.), *vacated and remanded*, --- U.S. ----, 136 S. Ct. 479 (2015)). We, however, conclude that Mr. Park's contentions are without merit, and agree with the district court that Mr. Park has failed to establish a constitutional violation.

30

In particular, we believe that *Graham*'s third factor heavily favors Defendants, strongly militating in favor of a determination that Defendants' use of force was reasonable. Under the third *Graham* factor (i.e., whether Mr. Park actively resisted or attempted to evade arrest), "the relevant inquiry is whether the [force used by the officers] was reasonable and proportionate given [the arrestee's] resistance." *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016); *see also Cortez*, 478 F.3d at 1126 ("[T]he excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case.").

Here, the district court found that, a short time after the officers lifted him out of his chair to arrest him, Mr. Park fought back "forcefully" by tensing his arms, bracing his legs, and attempting to pull away from the officers. Aplt.'s App. at 325. Indeed, Mr. Park's own brief concedes that he "tense[d] his arms, brace[d] his legs, and tr[ied] to pull his arms away from [the officers]" in an attempt "to show that he did not want to leave his business." Aplt.'s Opening Br. at 10. In cases of physical resistance to an arrest, as here, officers may employ the amount of force necessary to complete the arrest, *see Perea*, 817 F.3d at 1203; *Cortez*, 478 F.3d at 1126, and—if they believe (even mistakenly) that the arrestee will continue to fight back—they may use "more force than in fact" necessary, *Saucier*, 533 U.S. at 205. Guided by the third *Graham* factor, and considering the totality of the circumstances, it is patent to us that Defendants' use of

31

force—including a knee strike to Mr. Park's torso and taking him to the ground—was proportional and reasonable given the nature of Mr. Park's "forceful[]" physical resistance. Aplt.'s App. at 325. Accordingly, like the district court, we conclude that Mr. Park's conduct made Defendants' use of force reasonable.

As to Mr. Park's contention that the circumstances of this case obliged the district court to look beyond the three *Graham* factors, we cannot properly quarrel with the notion that the *Graham* inquiry may "not always give a clear answer as to [every] particular application of force." *Saucier*, 533 U.S. at 205 ("This is the nature of a test which must accommodate limitless factual circumstances."). *Graham* itself recognizes that the excessive-force analysis is not restricted to the three factors it identifies; instead, it "requires careful attention to the facts and circumstances of each particular case." 490 U.S. at 396; *see Cavanaugh*, 718 F.3d at 1249 (noting that the relevant considerations under *Graham* "include, but are not limited to" the three identified factors). Indeed, as noted *supra*, in reaching our reasonableness conclusion, we considered the totality of the circumstances. The problem for Mr. Park is that the additional considerations that he identifies do not undercut the reasonableness of Defendants' use of force.

First, Mr. Park urges us to account for the fact that he "posed no obstacle to the execution of the search warrant" when Defendants took him "to the ground." Aplt.'s Opening Br. at 53. Defendants, however, resorted to force because Mr.

Park *physically resisted their arrest*, not because he impeded their execution of the search warrant. Next, Mr. Park says that our analysis here must consider his "special characteristics" that "ma[de] him more susceptible to harm from this particular use of force," *id.* at 53–54 (quoting *Aldaba I*, 777 F.3d at 1156)—namely, his difficulties with English, his age, and his physical stature. However, these factors did not justify Mr. Park's physical resistance to his arrest and that resistance precipitated Defendants' use of force. We have no doubt that this use of force was reasonable. And, under the circumstances of this case, Mr. Park's invocation of additional variables does not undercut that conclusion.

For the foregoing reasons, we conclude that Mr. Park has failed to demonstrate a violation of his Fourth Amendment right to be free from excessive force. Therefore, we conclude that Defendants are entitled to qualified immunity on Mr. Park's Fourth Amendment claim of excessive force, and affirm the district court's judgment in this respect too.

**3**

Next, we address Mr. Park's argument that the district court improperly granted summary judgment—on the basis of qualified immunity—to Officer Gaitan on Mr. Park's First Amendment claims.

In reviewing the district court's judgment in the First Amendment context, we take care "to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field

33

of free expression." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d

1192, 1201 (10th Cir. 2007) (quoting *Citizens for Peace in Space v. City of Colo.

Springs*, 477 F.3d 1212, 1219 (10th Cir. 2007)). Nonetheless, Mr. Park must still

overcome both prongs of the qualified-immunity analysis. Because we conclude

that Mr. Park has failed to demonstrate that Officer Gaitan violated his clearly

established First Amendment rights, we determine that the district court correctly

granted summary judgment on qualified-immunity grounds.[10]

More specifically, Mr. Park has not cited any controlling authority that

would have put "every reasonable official" in Officer Gaitan's position on notice

in November 2010 that he would be violating Mr. Park's First Amendment rights

if he seized and retained video footage, and the equipment storing it, pursuant to a

valid search warrant. *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*,

---

[10] Mr. Park bases his First Amendment claim on theories of retaliation and prior-restraint. *See Brammer-Hoelter*, 492 F.3d at 1202 (explaining the "distinct" nature of claims brought under retaliation and prior-restraint theories). Mr. Park first claims that Officer Gaitan retaliated against him by returning to his business and arresting him, after Mr. Park initially declined to provide him with the video footage. Mr. Park then bases his prior-restraint claim on three distinct sets of facts: (1) the censorship of his video recordings, while his video equipment was retained by the APD (and inaccessible to Mr. Park), (2) the chilling effect on his future recording activity caused by the seizure of the video recorder, and (3) the chilling effect on his future recording activity caused by Officer Gaitan's alleged threat that Mr. Park would go to jail if he did not hand over his video recorder during the parties' initial encounter. Because Mr. Park fails to demonstrate that the underlying factual circumstances here support *any* First Amendment claim under clearly established law, we need not conduct a separate analysis as to his retaliation and prior-restraint theories.

34

566 U.S. 658, ---, 132 S. Ct. 2088, 2093 (2012)); *see id.* (noting that the plaintiff must demonstrate that "the violative nature of [the] *particular* conduct is clearly established" (quoting *al-Kidd*, 563 U.S. at 742)); *accord Aldaba II*, 844 F.3d at 877; *see also Quinn*, 780 F.3d at 1005 ("A plaintiff may satisfy [the clearly established law] standard by identifying an on-point Supreme Court or published Tenth Circuit decision; *alternatively*, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" (emphasis added) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010))).  Consequently, Mr. Park has failed to carry his burden of demonstrating that Officer Gaitan's conduct violated his clearly established First Amendment rights.[11]

Mr. Park does cite some Supreme Court cases, as well as one Tenth Circuit case, in an effort to carry his burden.  But they *all* focus on officials' ability to limit speech deemed to be obscene, *not* on an officer's ability to inspect and seize video-related materials from a third-party for purposes of a criminal investigation, as we confront here.  *See Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 57 (1989) (determining whether "the Constitution forbids the use of obscenity

---

[11]     The district court did not rest its decision on the second prong of the qualified-immunity standard (i.e., the clearly established law prong), and Officer Gaitan does not pursue an argument along this line in his briefing, but "we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

35

violations as predicate acts for a RICO conviction [under state law]"); *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 547 (1975) (addressing "whether First Amendment rights were abridged when respondents denied petitioner the use of a municipal facility . . . for the showing of the controversial rock musical 'Hair'" based on their understanding that "the musical . . . involved nudity and obscenity on stage"); *Roaden v. Kentucky*, 413 U.S. 496, 497 (1973) ("The question presented in this case is whether the seizure of allegedly obscene material, contemporaneous with and as an incident to an arrest for the public exhibition of such material in a commercial theater, may be accomplished without a warrant."); *Heller v. New York*, 413 U.S. 483, 484 (1973) (addressing "whether a judicial officer . . . , who has viewed a film and finds it to be obscene, can issue a constitutionally valid warrant for the film's seizure as evidence in a prosecution against the exhibitor, without first conducting an adversary hearing on the issue of probable obscenity"); *Camfield v. City of Okla. City*, 248 F.3d 1214, 1218 (10th Cir. 2001) (addressing the constitutionality of authorities' seizure of a film that they believed contained child pornography). Thus, Mr. Park has provided no Supreme Court or Tenth Circuit authority that "*squarely governs* the case here," *Mullenix*, 136 S. Ct. at 309 (quoting *Brosseau*, 543 U.S. at 201).

Nor has Mr. Park made a permissible alternative clearly established law showing by demonstrating that the clear weight of authority from our sister circuits favors his *specific* legal position. *See Quinn*, 780 F.3d at 1005. Rather,

36

he cites cases that generally discuss citizens' First Amendment rights to record law enforcement officers' activities without fear of arrest or prosecution, *not* the *specific* kind of conduct at issue here. For example, in *Glik v. Cunniffe*, which Mr. Park cites, officers arrested the plaintiff for violating a state wiretap statue after recording officers without their consent. 655 F.3d 78, 79–80 (1st Cir. 2011). The First Circuit held that the recording constituted protected First Amendment activity, because citizens have "a constitutionally protected right to videotape police carrying out their duties in public." *Id.* at 82 (answering the "fairly narrow" constitutional question "unambiguously in the affirmative"). Thus, *Glik* makes clear to officers that arresting a person *based on his recording of them* violates that person's First Amendment rights under certain circumstances, but *Glik* offers little, if any, guidance to every reasonable officer in Defendants' position regarding when his seizure and retention of video recordings and the equipment housing them, pursuant to a valid search warrant, would run afoul of a person's First Amendment rights. The other cases from other circuits that Mr. Park identifies similarly stand on a distant shore from this case; they are factually distinct to say the least. *See Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Jean v. Mass. State Police*, 492 F.3d 24 (1st Cir. 2007); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995).

For the foregoing reasons, we conclude that Mr. Park has failed to

37

demonstrate that Officer Gaitan violated his clearly established First Amendment rights; consequently, Officer Gaitan is entitled to qualified immunity on Mr. Park's First Amendment claims. We affirm the district court's judgment in this respect.

**B**

We now turn our attention to Mr. Park's state-law claims for false imprisonment, false arrest, assault and battery. The district court granted summary judgment to Defendants on all four claims; Mr. Park argues on appeal that the court erred as to each. "We review a district court's grant of summary judgment de novo, using the same standards applied by the district court." *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As explained below, contrary to the district court, we conclude that Defendants are not entitled to summary judgment on Mr. Park's false imprisonment and false arrest claims, but we agree with the court's entry of summary judgment in Defendants' favor regarding Mr. Park's assault and battery claims.

Beginning with the first two claims, we have previously explained that "[u]nder New Mexico law, 'false imprisonment consists of intentionally confining

38

or restraining another person without his consent and with knowledge that he has no lawful authority to do so.'" *Fuerschbach*, 439 F.3d at 1207 (quoting *Romero v. Sanchez*, 895 P.2d 212, 215 (N.M. 1995)). False arrest, a closely related claim, "occurs when the 'facts available to [a] detaining officer would [not] warrant [a] person of reasonable caution to believe detention appropriate.'" *Id.* (alterations in original) (quoting *Sanchez*, 895 P.2d at 215). Additionally, "[a] defendant possessed of a good faith and reasonable belief in the lawfulness of the action is not liable for false imprisonment or false arrest"; *such a defense "ordinarily requires a showing of probable cause*." *Id.* at 1207–08 (emphasis added) (citing *State v. Johnson*, 930 P.2d 1148, 1154 (N.M. 1996); *Perea v. Stout*, 94 N.M. 595, 613 (N.M. 1980)). Because the district court concluded in its analysis of Mr. Park's unlawful seizure claim that Defendants had probable cause for Mr. Park's arrest, it accordingly found that they had a good-faith defense to Mr. Park's false imprisonment and false arrest claims.

On appeal, Mr. Park argues that the district court erred in finding that Defendants had probable cause for purposes of these state-law claims, just as the court erred in reaching a like conclusion for purposes of the Fourth Amendment unlawful seizure claim. Defendants, in turn, rely on their earlier argument that they had probable cause to detain and arrest Mr. Park because they reasonably believed he had unlawfully resisted an officer under Section 30-22-1(A).

We reject Defendants' argument here for essentially the same reasons we

39

rejected like contentions *supra* regarding Mr. Park's Fourth Amendment unlawful seizure claim. As we indicated there, Defendants did not have probable cause to arrest Mr. Park for violating Section 30-22-1(A) of the resisting statute. We will not repeat that probable-cause analysis here. Suffice it to say, that it follows ineluctably from that analysis that any good-faith defense as to these claims would fail. We accordingly reverse the district court's grant of summary judgment to Defendants on these claims.

Turning to Mr. Park's assault and battery claims, we agree with the district court that Defendants are entitled to summary judgment. Under New Mexico law, "[f]or there to be an assault, there must have been an 'act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery.'" *Fuerschbach*, 439 F.3d at 1208 (quoting N.M. Stat. Ann. § 30-3-1(B)). "Battery occurs when an individual 'acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . an offensive contact with the person of the other directly or indirectly results." *Id.* at 1208–09 (omission in original) (quoting *State v. Ortega*, 827 P.2d 152, 155 (N.M. 1992)).

The district court, relying on an unpublished decision from our court, noted that a law enforcement officer can be held liable for assault and battery only when the officer "uses more than necessary force to restrain a person." Aplt.'s App. at 341 (citing *Reynaga v. Cty. of Bernalillo*, 64 F.3d 670 (10th Cir. 1995)

40

(unpublished table decision)). Because the district court concluded in its Fourth Amendment analysis that Defendants did not employ unconstitutionally excessive force in effectuating Mr. Park's arrest, the district court found (guided by *Reynaga*) that they could not be liable for assault and battery under New Mexico law.

We agree with the district court's conclusion and, in this regard, note that we are persuaded by the panel's reasoning in *Reynaga*. *See, e.g.*, 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *United States v. Scott*, 529 F.3d 1290, 1299 n.9 (10th Cir. 2008) (same). Its holding appears to have accurately captured the import of New Mexico law. *See State v. Gonzales*, 642 P.2d 210, 213 (N.M. Ct. App. 1982) ("Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests . . . . When acting in good faith, the courts will afford them the utmost protection, and they will recognize the fact that emergencies arise [in the course of an arrest]." (quoting *Mead v. O'Connor*, 344 P.2d 478 (N.M. 1959)); *State v. Kraul*, 563 P.2d 108, 112–13 (N.M. Ct. App. 1977) (noting that officers are entitled to use force necessary to effectuate an arrest, even an unlawful one).

As noted above in our excessive-force analysis, even construing the facts in Mr. Park's favor, we cannot conclude that Defendants used more force than reasonably necessary to effectuate Mr. Park's arrest. Now, guided by *Reynaga*

41

and related New Mexico authorities, we conclude that Defendants are entitled to summary judgment on Mr. Park's assault and battery claims. *See Reynaga*, 64 F.3d 670, at *2 (applying New Mexico law and noting that an officer may not be held liable in connection with the use of "reasonable force" to effect an arrest). Accordingly, we affirm the district court's grant of summary judgment to Defendants on Mr. Park's assault and battery claim.

## IV

For the foregoing reasons, we **AFFIRM** the district court's judgment as to (1) Mr. Park's Fourth Amendment claims of unlawful seizure and excessive force; (2) his First Amendment claims; and (3) his state-law claims for assault and battery. However, we **REVERSE** the district court's judgment as to Mr. Park's state-law claims for false imprisonment and false arrest, and **REMAND** the case to the district court for further proceedings consistent with this order and judgment.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge