**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 1, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL STOREY,

       Plaintiff-Appellant,

v.

SERGEANT TAYLOR; OFFICER
ROBERT FERREYIA OF THE LOS
LUNAS POLICE DEPARTMENT;
VILLAGE OF LOS LUNAS,

       Defendants-Appellees.

No. 11-2180

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 1:08-CV-00207-JCH-LAM)**

---

Joseph P. Kennedy, Kennedy Law Firm, Albuquerque, New Mexico, for
Appellant.

Gregory V. Pelton, Colorado Springs, Colorado, for Appellees.

---

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **TYMKOVICH**, Circuit
Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Michael Storey brought civil rights claims against police officers after they arrested him at his home during an investigation of a report of a loud domestic argument. The question we consider is whether the officers had probable cause to order Storey to step outside his home and arrest him when he refused to do so, and if exigent circumstances or community safety concerns could support the seizure to facilitate further investigation. We conclude the officers lacked probable cause and exigent circumstances to justify the arrest, and the community caretaking exception to the Fourth Amendment does not apply here.

We therefore REVERSE the district court's grant of summary judgment and remand for further proceedings.

# I. BACKGROUND[1]

On September 7, 2007, the Los Lunas, New Mexico Police Department received an anonymous call reporting a loud argument at Storey's address. The Department dispatched Officers Taylor and Garcia to investigate.

When Taylor and Garcia arrived at Storey's residence, they heard no argument. They knocked on the front door and Storey answered. Taylor's belt tape reveals the following exchange[2]:

---

[1] In reviewing the grant of summary judgment, we view the facts presented in the light most favorable to the nonmoving party, Storey. *See Dodds v. Richardson*, 614 F.3d 1185, 1191–92 (10th Cir. 2010).

[2] The quality of the audio is inconsistent, and portions of the tape are

(continued...)

TAYLOR:    Hi.  Was there an argument here?
STOREY:    My wife was, yeah.
TAYLOR:    Your wife was?
STOREY:    Yeah.
TAYLOR:    OK, that's why we're here.  What's going on?  Is your wife here now?
STOREY:    No.
TAYLOR:    She's not here now?
STOREY:    Uh-uh.
TAYLOR:    OK.  Did she [inaudible] with you or what went on?
STOREY:    We had a little argument.  I don't know who called.
TAYLOR:    OK, she didn't call, your neighbor called.
STOREY:    OK.
TAYLOR:    OK.  You guys stand outside arguing and fussing . . .
STOREY:    Listen, listen, it wasn't outside.
TAYLOR:    Well, here's the deal.  Your neighbors called, OK.
STOREY:    I was not outside.
TAYLOR:    Well, it doesn't matter.  If they hear you, it's the same as you being outside.  Alright?  That's how that works.  OK?  I'm sitting here.  As long as you guys are safe and there's only one of you home, that's all we're concerned about.
STOREY:    [inaudible]
TAYLOR:    There's no one else in the house with you?
STOREY:    My dogs.
TAYLOR:    Your dogs are in the house with you?  OK.  Is your wife coming home later, what's going on with [inaudible]
STOREY:    [inaudible]

Supp. App., Belt Tape.

---

[2](...continued)
inaudible.  The district court admitted the tape into evidence but denied the admission of a formal transcript.  The exchange we recount here is a reasonable interpretation of the audio, but does not necessarily reflect the exact words used.  In any event, Taylor does not dispute the essential accuracy of Storey's interpretation of the belt tape, which aligns with the interpretation we present here.

Taylor then asked Storey about the subject of his argument with his wife. When Storey refused to tell him, he ordered Storey to exit the house:

TAYLOR: Now, what started the argument? [inaudible]
STOREY: Do I have to tell you everything?
TAYLOR: Yes you do. You have to tell me what's going to be safe.
STOREY: I do not have to tell you anything.
TAYLOR: Sir, step out of the house.
STOREY: No.
TAYLOR: Step out of the house.
STOREY: I'm not doing it.
TAYLOR: You're going to step out of the house.
STOREY: No.
TAYLOR: Listen. You shall obey my command and step outside the house or you go to jail. Step outside.
STOREY: I am not doing that.
TAYLOR: Step out of the house.
STOREY: Why are you doing this?
TAYLOR: You are going to comply with a lawful order. You don't want to deal with this, you can go to jail.

*Id.*

At this point, Taylor appears to have pulled Storey outside, handcuffed him, and placed him under arrest.[3] After another exchange that is mostly inaudible on the belt tape, Taylor said:

TAYLOR: You're going to jail because you refuse to comply because you've got a case of the attitude.
STOREY: I'll lay down on the ground if you want me to.
TAYLOR: Nope. You want to be a smart alec and you want to think you're going to tell me your rights? Here, let me

---

[3] Taylor strongly disputes that he pulled Storey out of his house, contending Storey was already outside. But, again, for present purposes, we view the facts in the light most favorable to Storey.

> tell you State of New Mexico. You're required to obey me when I issue you a lawful order. So now you can go to jail. Take him to jail. Resist to obey, twenty-five hundred dollars.

*Id.* Garcia transported Storey to the police department, where he was charged with resisting, evading, or obstructing an officer.

When the officers first arrived, Storey's wife, Theresa, was not in the home, but had gone to pick up the couple's children from school. While the officers were questioning Storey, Theresa arrived back home, entering through the attached garage. After the officers placed Storey under arrest, Theresa came out to speak with Taylor and an unidentified officer.

Storey and his wife sued Taylor and other defendants in state court, bringing a number of state and federal claims.[4] The defendants removed to the United States District Court for the District of New Mexico. The district court granted summary judgment for the defendants on Storey's wrongful arrest and retaliatory arrest claims, but allowed Storey's excessive force claim to proceed to trial. The jury did not reach a verdict on the excessive force claim, and Storey has now abandoned that claim. Taylor is the only remaining defendant.

Storey appeals the district court's grant of summary judgment.

---

[4] Theresa Storey's claims went to trial and she obtained a judgment against Taylor on her unlawful detention claim.

# II. DISCUSSION

## A. Standard of Review

"We review a district court's decision to grant summary judgement de novo, applying the same standard as the district court. At this stage, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010).

Taylor argues he is entitled to qualified immunity. "When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff, who must clear two hurdles to defeat the defendant's motion. The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Id.*

> A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his actions violate that right. . . . While the plaintiff does not have to present a case with an identical factual situation, the plaintiff must show legal authority making it apparent that in the light of pre-existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue. In determining whether a right was clearly established, we look for Supreme Court or Tenth Circuit precedent on point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains.

*Id.*

With these principles in mind, we consider Storey's claims.

-6-

### B. *Unlawful Arrest*

Storey first argues Taylor violated the Fourth Amendment's prohibition on unreasonable seizures because they arrested him without a warrant or exigent circumstances that would justify a warrantless arrest. Further, Storey argues the law was clearly established at the time of his arrest.

#### 1. *Legal Standards*

Police can enter a home without a warrant only with the voluntary consent of the owner or a third party with apparent authority over the premises, or when exigent circumstances exist. *See United States v. Carter*, 360 F.3d 1235, 1241 (10th Cir. 2004). To enter a home and seize an individual for a routine investigatory purpose, police must have exigent circumstances and probable cause, or a warrant, "no matter whether the seizure is an investigatory stop or an arrest." *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1073 (10th Cir. 2010). Probable cause is established where "a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citation and quotation marks omitted).[5]

In determining whether the risk of personal danger creates exigent circumstances, we use a two-part test: "whether (1) the officers have an

---

[5] We note that a warrantless *search*—as opposed to a seizure—may sometimes be justified by exigent circumstances even without probable cause. *See United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006).

objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006). In determining whether officers had an objectively reasonable basis, "[w]e evaluate whether the officers were confronted with reasonable grounds to believe there was an immediate need 'guided by the realities of the situation presented by the record' from the viewpoint of 'prudent, cautious, and trained officers.'" *Id.* (quoting *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998)). This inquiry "is essentially one of reasonable belief." *Id.* (citing *United States v. Gay*, 240 F.3d 1222, 1227 (10th Cir. 2001)).

A warrantless arrest may also be justified if the arresting officer was acting in a "community caretaking" role. "We have recognized that, in fulfilling their duties, police officers may exercise functions—'community caretaking functions'—wholly separate and apart from detecting, investigating, or acquiring evidence of a crime." *Lundstrom*, 616 F.3d at 1120. These functions may include, for example, restraining an intoxicated individual, *see Novitsky v. City of Aurora*, 491 F.3d 1244, 1253–54 (10th Cir. 2007); impounding a vehicle left on the side of the road, *see United States v. Hunnicutt*, 135 F.3d 1345, 1351 (10th Cir. 1998); or transporting an individual to safety, *see United States v. Madrid*, 30 F.3d 1269, 1277 (10th Cir. 1994). A detention under the community-caretaking exception:

must be based upon specific and articulable facts which reasonably warrant an intrusion into the individual's liberty. Additionally, the government's interest must outweigh the individual's interest in being free from arbitrary governmental interference. Finally, the detention must last no longer than is necessary to effectuate its purpose, and its scope must be carefully tailored to its underlying justification.

*United States v. Garner*, 416 F.3d 1208, 1213 (10th Cir. 2005) (citation, alterations, and quotation marks omitted).

### 2.  Probable Cause

Taylor claims he had probable cause to arrest Storey for failure to obey a lawful order—specifically, the order to exit the house.[6]  Taylor admits he did *not* have probable cause to believe Storey committed a domestic-violence-related offense.

The problem with Taylor's argument is it relies on the assumption that the order in question was itself lawful.  Absent exigent circumstances, Taylor had no basis on which to order Storey out of his house.  Clearly, Storey disobeyed Taylor's order to step out of the house.  But a sufficiently coercive order requiring an individual to leave his own house counts as a seizure subject to the protections of the Fourth Amendment.  *Lundstrom*, 616 F.3d at 1124; *see also Kentucky v. King*, 131 S. Ct. 1849, 1862 (2010) ("[E]ven if an occupant chooses

---

[6]  New Mexico law criminalizes "resisting or abusing any . . . peace officer in the lawful discharge of his duties."  N.M.S.A. 1978 § 30-22-1(D).  A detention pursuant to this statute is only justified if the order is actually lawful.  *See Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012).

to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time."); *United States v. Reeves*, 524 F.3d 1161, 1167 (10th Cir. 2008) ("Circumstances that indicate a seizure include, the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.") (internal quotation marks omitted). Although the order to "step out of the house" could be construed as an investigatory detention rather than a full arrest, that distinction does not matter in an individual's own home, *see Armijo*, 601 F.3d at 1073; the "sanctity of the home" lies "at the very core of the Fourth Amendment" and cannot reasonably be disturbed absent exigent circumstances. *Payton v. New York*, 445 U.S. 573, 589–90 (1980) (alterations and quotation marks omitted); *accord King*, 131 S. Ct. at 1856.

Thus, the order was not lawful—and Storey's refusal to obey could not justify his arrest—unless the order was itself supported by exigent circumstances.

### 3. Exigent Circumstances

Even if we assume exigent circumstances would have been sufficient for Taylor to order Storey to "step out of the house," the facts here, viewed in the light most favorable to Storey, demonstrate a lack of exigent circumstances.

A report of a domestic argument—standing alone—does not demonstrate exigent circumstances per se. *United States v. Davis*, 290 F.3d 1239, 1244 (10th Cir. 2002). Thus, officers responding to a report of a domestic dispute must point to *something* beyond the mere fact of an argument to demonstrate an "objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others." *Najar*, 451 F.3d at 718. Either additional depth and detail in the report, or additional facts learned in the course of the investigation, are required to support the exigency. *See United States v. Martinez*, 643 F.3d 1292, 1297 (10th Cir. 2011).

Here, the record reveals the following facts leading up to Storey's arrest. First, Los Lunas police received a report of a domestic dispute—specifically, a loud argument—at Storey's residence. Second, by the time police arrived, they could not hear or otherwise detect an ongoing altercation; the argument, apparently, had ended. Third, there were no other visual or audible indications of past or present violence. Fourth, Storey answered the door and admitted he had an argument with his wife, but claimed the argument was now over and she had left. Fifth, while the officers were talking with Storey, they observed Storey's wife, Theresa, returning to the house via the garage. Nothing the officers observed about her suggested a risk to her safety. The question is whether any of these circumstances would justify a belief that there was an immediate need to protect the safety of others.

We examined a similar factual scenario in *Lundstrom v. Romero*, 616 F.3d 1108 (10th Cir. 2010). There, an anonymous caller reported hearing the sounds of a woman screaming and a toddler being beaten in the plaintiff's backyard. The police department dispatched an officer to conduct a child welfare check. When the officer arrived, she heard "a high-pitched voice" but no other sounds that might indicate an ongoing altercation. *Id.* at 1116. The plaintiff answered the door, but after learning why the officer was there, he informed her that there were no children present and shut the door. The officer requested backup, and more officers arrived. In the meantime, the plaintiff called 911, apparently because he believed the officer was an impersonator. Over the phone, another officer advised the plaintiff that the officers surrounding his house were authentic, and ordered him to go outside. The plaintiff eventually complied and was placed under arrest. After officers searched the plaintiff's house, they let him go.

We found the plaintiff was unlawfully seized when he complied with the order to exit his house. We found the officers had no probable cause because "nothing indicated he had done anything wrong and he did not pose a threat to the officers." *Id.* at 1124. We also found no exigent circumstances that would justify the seizure because nothing known to the officers (apart from the anonymous caller) indicated the presence of a child in the house. Significantly, we noted that the plaintiff denied the presence of any children; the officers did not observe any children; and another occupant of the house, who was detained outside, likewise

-12-

claimed there were no children in the house. We also found the law on this point was clearly established, making qualified immunity inapplicable.

Here, as in *Lundstrom*, police responded to an anonymous 911 call reporting an altercation, though in the present case only loud arguing was reported. In both cases, when police arrived, there were no signs of an ongoing altercation, and the information available to the officers did not indicate violence was imminent. Taylor claims the fact that Storey's wife returned home while they were questioning Storey could have reignited a volatile situation. We do not find this particularly probative, however, given the presence of police officers and the absence of facts supporting an escalating situation. At best, this fact was "neutral" and did not significantly alter the exigent-circumstances equation since Taylor did not even ask Storey's wife to come to the door before he arrested Storey. *Martinez*, 643 F.3d at 1299.

Taylor points to several cases that he argues justify a finding of exigent circumstances. All of those cases, however, involved some significant facts in addition to a report of a domestic dispute.

- *United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir. 2002) – reports of gunfire from two independent sources. Gunfire, obviously, is more indicative of exigent circumstances than a loud argument between spouses.

- *Tierney v. Davidson*, 133 F.3d 189, 192 (2d Cir. 1998) – before entering the dwelling, officer conferred with two witnesses on the scene, who reported "screaming and banging" continuing until the officer arrived. The officer also saw broken glass, indicating recent violence.

- *Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010) – investigating officer heard ongoing shouting as he approached the dwelling, and was greeted "with a slew of profanities."[7]

- *United States v. Brooks*, 367 F.3d 1128, 1134 (9th Cir. 2004) – caller reported sounds of an argument *and* physical beating in a hotel room, not just arguing. In addition, the investigating officer personally spoke with the caller in the hotel lobby to confirm the report and gather additional information before proceeding to the hotel room.

- *Fletcher v. Town of Clinton*, 196 F.3d 41, 47 (1st Cir. 1999) – police did not observe any signs of ongoing violence. But they did observe two individuals in the home, one of whom they knew had a restraining order against the other based on recent threats of

---

[7] Below, the district court found Storey was "red-faced and agitated" when he answered the door. Aplt. Errata Sheet at 10. Storey, however, disputes that he was agitated or otherwise acting in a threatening manner when he answered the door. Certainly, it is not obvious from the belt tape that Storey was upset when he opened the door (though he became so later in the encounter). Thus, this presents a disputed issue of fact unsuitable for resolution at the summary-judgment stage.

violence. Thus, unlike Taylor, the officers in *Fletcher* were privy to additional facts that made violence more likely.

In summary, all of these cases involved credible evidence known to the officers of physical abuse or additional corroborating circumstances that increased the potential for violence. That is not the case here.

In addition to these cases, two recent Supreme Court cases illustrate the contours of exigent circumstances in similar situations. In *Ryburn v. Huff*, 132 S. Ct. 987 (2012) (per curiam), officers were investigating a high school student suspected of planning a school shooting. When officers arrived at the student's home, they detected movement within. Nonetheless, no one answered the phone in the house. The suspect's mother then answered her cell phone and eventually opened the door to speak with the officers. When an officer asked the suspect's mother whether there were guns in the house, she "responded by immediately turning around and running into the house." *Id.* at 989. The officers followed her into the home without a warrant. The Court found that based on her demeanor, the serious nature of the threats, and her evasive actions the officers could have reasonably perceived an imminent threat of violence. *Id.* at 990. But neither an ongoing investigation of a serious crime, nor a sudden, unexplained movement in response to a question about weapons is present here.

In the second case, *Brigham City v. Stuart*, 547 U.S. 398 (2006), police were investigating a loud party at a residence. When they arrived, they "heard

-15-

shouting from inside," and approached the house to investigate further. *Id.* at 401. Through the windows, they witnessed an ongoing fight involving several participants, and entered the house. *Id.* The Supreme Court found the warrantless entry was lawful because "the officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning." *Id.* at 406. Here, however, there were no observable facts that would support an objectively reasonable belief that violence was ongoing or imminent when the officers arrived.

In sum, a report of a loud argument—without more—that has ceased by the time an officer arrives, although relevant to the exigent circumstances inquiry, does not alone create exigent circumstances to justify a warrantless arrest. And, unlike in the cases cited by Taylor, there are no *additional* facts that would significantly increase the likelihood of violence. Accordingly, viewing the facts in the light most favorable to Storey, we find Storey's arrest was not justified by exigent circumstances.

### 4. *Community Caretaker Exception*

Taylor also argues he lawfully arrested Storey in the performance of his community-caretaking duties. This argument, however, fails for the same reason as Taylor's exigent-circumstances argument: the facts do not show a likelihood of violence such that Taylor's actions were necessary to protect the safety of Storey, his wife, the officers, or others. *See Lundstrom*, 616 F.3d at 1124; *cf. Brigham*

*City*, 547 U.S. at 406. Thus, there were no "specific and articulable facts" to justify the intrusion on Storey's liberty. *Garner*, 416 F.3d at 1213.

We are not unsympathetic to officers in Taylor's position, who in the performance of their duties must often make split-second decisions based on incomplete information. We also recognize these decisions are sometimes complicated in potential domestic violence situations, in which one occupant's interest in privacy may be pitted against another's safety. It is our hope that citizens would be cooperative with police under such circumstances. Nonetheless, these policy concerns must yield to the Fourth Amendment. Absent additional facts indicating a greater possibility of violence, a loud argument between spouses does not suffice to justify a warrantless seizure within the home.

### 5. *Qualified Immunity*

Finally, Taylor argues that he is shielded by qualified immunity because, even if the arrest violated Storey's constitutional rights, the law on this point was not clearly-established.

We disagree. In *Lundstrom*, we found the legal principles underlying the plaintiff's Fourth Amendment rights to be clearly established. *See Lundstrom*, 616 F.3d at 1125. Here, "[i]t was similarly established that community caretaking detentions must be based on specific articulable facts warranting an intrusion into an individual's liberty. It was also unambiguous that a police officer must have probable cause to arrest an individual." *Id.* And it was also clear that exigent

circumstances were required. *Armijo*, 601 F.3d at 1070. Accordingly, Taylor is not entitled to qualified immunity.

### C. Retaliatory Arrest

Storey next challenges the district court's grant of summary judgment on his retaliatory arrest claim. He argues a jury could find he was arrested in retaliation for asserting his constitutional rights, based on the verbal exchange captured by Taylor's belt tape.

The court below found Storey's arrest was lawful. It also found that when an arrest is lawful, "then there is no but-for causation for a related tort requiring a retaliatory motive." Aplt. Errata Sheet at 6. Thus, the court applied qualified immunity and granted summary judgment. This result was consistent with a recent Supreme Court opinion holding that, in the absence of but-for causation, the arresting officer is entitled to qualified immunity from a retaliatory-arrest claim. *Reichle v. Howards*, 132 S. Ct. 2088, 2096 (2012).

But, as discussed above, Storey's arrest was unlawful because Taylor lacked probable cause. Thus, the question becomes whether, in light of the evidence, a reasonable jury could conclude that Taylor's retaliatory motive was a but-for cause of Storey's arrest. Since the district court did not answer this question, we remand this issue for further consideration.

# III.  CONCLUSION

For the reasons stated above, we REVERSE the district court's grant of summary judgment and REMAND for further proceedings.