EBEL, Circuit Judge.
Manuel Romero was charged with one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and one count of knowingly possessing a stolen firearm under 18 U.S.C. § 922(j). Romero filed a motion to suppress the firearm that a Las Cruces police officer discovered in Romero's backpack during a search incident to his arrest for obstructing an officer in violation of New Mexico Statute § 30-22-1(D). The officer arrested Romero for obstruction because he failed to immediately comply with the officer's request that he submit to a pat-down search. Romero argued in his motion that the firearm must be suppressed because the officer had neither (1) reasonable suspicion to conduct the pat-down search nor (2) probable cause to arrest Romero for obstruction. The district court denied Romero's motion. We reverse, because we agree with Romero's latter argument that there was insufficient probable cause to support an arrest under section 30-22-1(D). Thus, the search of the backpack cannot be supported as a search incident to arrest. Because of this ruling, we do not address Romero's first argument that there was no reasonable suspicion to support the initial pat-down search. We remand this case to the district court for further proceedings.
I. BACKGROUND
In reviewing a district court's ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the prevailing party and "accept the district court's findings of fact unless they are clearly erroneous." United States v. Hernandez, 847 F.3d 1257, 1263 (10th Cir. 2017). The district court found the following *1126 facts, none of which are clearly erroneous.
On Friday, April 29, 2017, Officer Matthew Dollar was on patrol in Las Cruces, New Mexico. At approximately 5:30 p.m., Officer Dollar drove past a church where he observed Romero standing at the front entry, peering into the window. Because he passed by it often on patrol, Officer Dollar knew that the church did not hold services at that time. Additionally, several days earlier, Officer Dollar learned that there had been reports of theft and vandalism occurring at other churches in the area. Given his observations of Romero and knowledge of the vandalism, Officer Dollar drove into the church parking lot to investigate.
Upon arriving, Officer Dollar observed Romero crouching down to fill up a water bottle from the outdoor hose connected to the church. He also noticed that Romero had a "pocket clip" for a folding pocket knife on his waist band near his right hip and a "linear bulge" on his right bicep that Dollar suspected was another knife. ROA Vol. I at 33-34. Officer Dollar's body-worn camera recorded the following exchange between him and Romero.
Officer Dollar: Police Department. Hey, what's up man? How are you?
Mr. Romero: Pretty good.
Officer Dollar: What's going on?
Mr. Romero: I'm getting some water and charging my phone. [Romero gestures to the cellphone and water bottle that he is holding, one in each hand.][1]
Officer Dollar: What's that?
Mr. Romero: I'm getting some water and trying to charge my phone.
Officer Dollar: You don't have any weapons or anything on you, do you?
Mr. Romero: No, I got a --. [Romero gestures to the pocket clip on his waistband.]
Officer Dollar: Don't reach for it. [Romero immediately lifts both hands up to chest level.]
Mr. Romero: Okay.
Officer Dollar: Set that down. Let me pat you down real quick.
Mr. Romero: Oh, man. Why?
Officer Dollar: Listen to me. This can go smoothly or it can go rough for you. I suggest that you go with what I'm asking you, alright, or I'll charge you with resisting, obstructing. It's your choice.
Mr. Romero: Are you going to give me a ticket or what?
Officer Dollar: I'm going to put you in handcuffs and take you to jail --
Romero: I don't want to go to jail.
[At this point in the encounter, Officer Dollar drew his taser and pointed it at Mr. Romero.]
Officer Dollar: --or we can go this route. Put it down. [Romero sets his cell phone and water bottle on the ground.]
Officer Dollar: Put your hands on the wall.
Mr. Romero: Can I take this off? [Gesturing to drawstring backpack.]
Officer Dollar: No, don't reach for anything.
Mr. Romero: Ah, man. Why do you want to (unintelligible)?
*1127 Officer Dollar: Hey, you're at a church. You don't belong here right now. Okay? It can go one of two ways.
Mr. Romero: Why do you want to take me to jail?
Officer Dollar: You can go to the ground or you can comply. [Romero begins slowly lowering his body to the ground.]
Mr. Romero: Please don't tase me.
Officer Dollar: Go to the ground.
Mr. Romero: I don't want to go to get tased [sic].
Dist. Ct. Op. at ----.
As noted above, when Officer Dollar pointed his taser at Romero and said "put it down," Romero put the cell phone and water bottle that he was holding on the ground. Then, Officer Dollar immediately directed Romero to put his hands on the wall. Romero responded promptly by turning toward the church wall. After a few more exchanges, Officer Dollar says to Romero, "You can go to the ground." Id. At that directive, Romero began lowering his body to the ground, arriving there just five seconds after the command. Officer Dollar then conducted a pat-down search that revealed a knife. Shortly thereafter, the video that we have been provided ends. Ultimately, Officer Dollar determined that Romero was resisting and failing to obey his commands and arrested him for violating N.M. Stat. § 30-22-1(D). Dollar searched Romero incident to that arrest and discovered a gun in his drawstring backpack.
As a result, the government charged Romero with one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and one count of knowingly possessing a stolen firearm under 18 U.S.C. § 922(j). Romero filed a motion to suppress the gun evidence, arguing, as relevant here, that Officer Dollar had neither reasonable suspicion to perform a pat-down search nor probable cause to arrest Romero for obstruction. If true, either shortcoming would independently render Romero's arrest unlawful under the Fourth Amendment, as well as the search incident to his arrest that uncovered the gun. The district court denied the motion, concluding that Officer Dollar both performed a lawful frisk, see Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and had probable cause to support his arrest. In the alternative, the district court determined that, if Officer Dollar lacked probable cause to arrest Romero, he effectuated the arrest under a reasonable mistake of law, making the incident search reasonable nonetheless. Romero pled guilty to both charges, but he reserved his right to appeal the suppression issues. We reverse.
II. DISCUSSION
Romero appeals the district court's reasonable suspicion and probable cause determinations as well as its alternate conclusion that Officer Dollar made a reasonable mistake of law. We assume without deciding that Officer Dollar conducted a lawful Terry frisk. However, even so, we agree with Romero that Officer Dollar lacked probable cause to arrest him for violating N.M. Stat. § 30-22-1(D). Furthermore, we reverse the district court's alternate mistake of law conclusion.
A. No probable cause to arrest
We first consider whether Officer Dollar had probable cause to arrest Romero for violating section 30-22-1(D) in order to justify conducting a search incident to that arrest. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In general, warrantless searches and *1128 seizures are per se unreasonable, Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), but that rule is subject to several exceptions. First, "[l]aw enforcement personnel may arrest a person without a warrant if there is probable cause to believe that person committed a crime." United States v. Gordon, 173 F.3d 761, 766 (10th Cir. 1999). Second, police may search a person that has been legally arrested because, as the Supreme Court has explained, the probable cause to support the arrest supports the search incident to the arrest. United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."). However, because "the fact of the lawful arrest ... establishes the authority to search," where probable cause for the arrest is lacking, the subsequent search is unconstitutional unless supported on other grounds. Id. Here, the government relies entirely on the purported lawfulness of the arrest to support the subsequent search, and, because we hold that Officer Dollar lacked probable cause to arrest Romero for obstruction, the subsequent search of his backpack was unlawful.
We review a district court's probable cause determination "de novo," but we "review findings of historical fact only for clear error and ... give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Like the district court, we rely primarily on a video with sound that is included in the record.
We have held that an officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts "that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested. Probable cause does not require facts sufficient for a finding of guilt; however, it does require more than mere suspicion." United States v. Morris, 247 F.3d 1080, 1088 (10th Cir. 2001) (internal quotation marks and citations omitted). "Probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer." United States v. Snow, 82 F.3d 935, 942 (10th Cir. 1996).
Officer Dollar arrested Romero for resisting an officer in violation of N.M. Stat. § 30-22-1(D), which forbids "[r]esisting, evading or obstructing an officer" by, inter alia, "resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties." The New Mexico Court of Appeals has so far interpreted the phrase "resisting or abusing" in section 30-22-1(D) to prohibit three types of conduct: (1) "physical acts of resistance," State v. Wade, 100 N.M. 152, 667 P.2d 459, 460 (N.M. Ct. App. 1983), (2) the use of "fighting words" to attack an officer, id. at 461, and (3) the refusal to "obey" lawful police commands, New Mexico v. Diaz, 121 N.M. 28, 908 P.2d 258, 259-62 (N.M. Ct. App. 1995) ; see also State v. Jimenez, 392 P.3d 668, 682 (N.M. Ct. App. 2017) ("[A]nother way a person can violate Subsection (D) is by avoiding doing something required, including refusing to comply with an officer's orders.").
The district court concluded that,
[b]ecause Mr. Romero did not comply with Officer Dollar's orders to place his water bottle, cell phone, and cell phone charger on the ground, and place his hands on the wall, Officer Dollar had probable cause to arrest Mr. Romero for refusing to comply with a lawful order in violation of Section 30-22-1(D).
*1129 Dist. Ct. Op. at ---- (emphasis added). Consistent with that conclusion, the government does not argue that Romero either physically resisted Officer Dollar or used fighting words to attack him. The government asserts only that Romero violated section 30-22-1(D) by refusing to obey Officer Dollar's commands. Based on the facts found by the district court that are supported by substantial evidence and the evidence in the record before us, we conclude that Romero did not refuse to obey Officer Dollar's commands in any way that could constitute unlawful "resistance" under section 30-22-1(D).
New Mexico and Tenth Circuit cases provide only a few examples of what it means to refuse to obey lawful police commands in violation of section 30-22-1(D). However, in each relevant case where a defendant is found to have unlawfully resisted an officer, the commands given by the officer are clear and repeated, the defendant is given a reasonable opportunity to comply with the commands under the circumstances, and the defendant nonetheless overtly refuses to comply. For example, in Diaz, the New Mexico Court of Appeals held that the defendant unlawfully resisted police under section 30-22-1(D) when he refused to drop a knife that he was holding despite being "repeatedly ordered" to do so by the police. 908 P.2d at 259 (N.M. Ct. App. 1995). There, police were dispatched to investigate a domestic violence situation. When they arrived, defendant was holding a knife and drunkenly yelling at his wife on the street. Id. Police repeatedly told defendant to "put down," "drop," or "throw" the knife that he was holding, but the defendant refused and instead backed away from the semi-circle of four police officers trying to apprehend him, continuing down the street for 150-200 yards until he was cornered and arrested. Id. The court of appeals determined that those facts were sufficient to support the jury's verdict finding the defendant guilty of violating section 30-22-1(D). Id. at 262.
Then, in City of Roswell v. Smith, the New Mexico Court of Appeals held that a defendant who refused to leave a Denny's restaurant parking lot after being repeatedly instructed by several police officers to do so unlawfully resisted an officer in violation of a city ordinance identical to section 30-22-1(D). 139 N.M. 381, 133 P.3d 271, 272-73 (N.M. Ct. App. 2006). In that case, the defendant was engaged in a loud argument with a few people in the parking lot when police arrived. Id. Although they determined no crime had been committed, the officers ordered everyone in the parking lot to go their separate ways to avoid causing a disturbance of the peace. Id. The defendant refused to leave. Id. The court of appeals upheld his conviction under the city obstruction ordinance.
Finally, in Storey v. Taylor, a police officer responding to a domestic violence call at the defendant's home asked the defendant six times to "step out of the house," and the defendant verbally refused to comply each time:
Officer: Sir, step out of the house.
Defendant: No.
Officer: Step out of the house.
Defendant: I'm not doing it.
Officer: You're going to step out of the house.
Defendant: No.
Officer: Listen. You shall obey my command and step outside the house or you go to jail. Step outside.
Defendant: I am not doing that.
Officer: Step out of the house.
Defendant: Why are you doing this?
Officer: You are going to comply with a lawful order. You don't want to deal with this, you can go to jail.
*1130 696 F.3d 987, 991 (10th Cir. 2012) ("Officer" and "Defendant" used in place of actual names). The officer then arrested the defendant for violating section 30-22-1(D). Id. The Tenth Circuit observed that the defendant's conduct "[c]learly" disobeyed the officer's order to step out of the house, despite ultimately concluding that the order to step outside was unlawful. Id. at 993.
In contrast with the above cases, in Keylon v. Albuquerque, the Tenth Circuit held that the defendant did not unlawfully resist an officer under section 30-22-1(D) when she declined to provide her identification to a police officer when asked for it. 535 F.3d 1210, 1217 (10th Cir. 2008). In that case, the defendant, Bertha Keylon, was approached by a police officer outside her home. Id. at 1213. The officer was investigating Keylon's son for committing a felony. Id. He asked Keylon for her son's birth date and address. Id. She said she did not know the information. Id. Then, the officer asked Keylon for identification. Id. Keylon did not produce an ID and instead walked away, stating "I'll get my ID when I'm ready." Id. The officer arrested Keylon for resisting an officer under section 30-22-1(D). Id. The arresting officer claimed that he had probable cause to suspect Keylon of violating section 30-22-1(D) because she gave "evasive answers." Id. at 1216. In Keylon's 18 U.S.C. § 1983 action against the officer for violating her Fourth Amendment rights, the Tenth Circuit held that "merely evasive" speech does not constitute "[r]esisting, evading or obstructing an officer" under section 30-22-1(D). Id. at 1216-17. Although we know from Diaz and Smith that physical resistance is not necessary to violate section 30-22-1(D), Keylon serves as the other bookend, standing for the principle that evasive speech is not a refusal to obey orders unless combined with the type of resolute noncompliance exhibited by the defendants in Diaz and Smith.
Given these background cases, Romero's conduct would not lead a reasonable person-a prudent, cautious, trained police officer-to believe that Romero was resisting in violation of section 30-22-1(D). Romero complied with Officer Dollar's instructions during their conversation, only fifty seconds of which is relevant to this probable cause analysis. During that brief encounter, Officer Dollar issued five clear instructions to Romero: (1) "[d]on't reach for it," (2) "[s]et that down," (3) "[l]et me pat you down," (4) "[p]ut your hands on the wall," and (5) "[g]o to the ground." Dist. Ct. Op. at ----. Romero complied with all of those commands except for the instruction that he put his hands on the wall, which became moot when Officer Dollar subsequently commanded Romero instead to go to the ground.
First, Officer Dollar said, "[d]on't reach for it," referring to Romero's belt. Romero immediately raised both hands up near his face. Supp. R. Vol. I at 1:01-02. Then, Officer Dollar commanded, "Set that down. Let me pat you down real quick." Id. at 1:02-03. At that point, Romero exhibited some consternation, stating, "Oh, man. Why?" Id. at 1:06-07. However, instead of repeating his command that Romero set his things down and submit to a pat-down search, Officer Dollar raised his voice, threatened to arrest Romero and take him to jail, and drew his taser and pointed it at Romero before he issued any further commands:
Officer Dollar: Listen to me. This can go smoothly or it can go rough for you. I suggest that you go with what I'm asking you, alright, or I'll charge you with resisting, obstructing. It's your choice.
Romero: Are you going to give me a ticket or what?
*1131 Officer Dollar: I'm going to put you in handcuffs and take you to jail--
Romero: I don't want to go to jail.
[At this point in the encounter, Dollar drew his taser and pointed it at Romero.]
Officer Dollar: --or we can go this route. Put it down. Put your hands on the wall.
Id. at 1:07-1:30. Romero then immediately put his things down on the ground and, at first, turned toward the wall, but then turned back to face Officer Dollar to ask a few more questions. Id. at 1:32-41. Officer Dollar answered Romero's questions without issuing new commands. Finally, Officer Dollar ordered Romero to "go to the ground," and within five seconds Romero laid on the ground. Id. at 1:41-45.
Unlike the culpable defendants in the cases above, Romero did not physically retreat from Dollar nor aggressively approach him nor verbally refuse to comply with his directives. He stood next to the church hose where he was first approached throughout the conversation and directly answered all of the questions that he was asked.[2] Id.; Dist. Ct. Op. at ---- - ----. Although Romero exhibited some frustration during the encounter, the fact that in one minute's time he complied with every unrevoked order that Officer Dollar gave distinguishes this case from Diaz, Smith, and Storey, and makes it more like Keylon. Therefore, we conclude that the district court erred by denying Romero's motion to suppress because Officer Dollar lacked probable cause to arrest Romero for resisting an officer under section 30-22-1(D), which rendered the search-incident-to-arrest likewise lacking in probable cause in violation of the Fourth Amendment.
B. No reasonable mistake of law
Finally, any mistake of law by Officer Dollar was not reasonable. The Supreme Court has held that "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." Heien v. North Carolina, 574 U.S. 54, 135 S. Ct. 530, 536, 190 L.Ed.2d 475 (2014). The Second Circuit has extended the mistake of law analysis to a probable cause determination in United States v. Diaz, 854 F.3d 197, 203-05 (2d Cir. 2017), although we have not. Assuming without deciding that Heien can be applied to Officer Dollar's probable cause determination, Officer Dollar cannot benefit from the rule from Heien in this case.
First, the Heien majority stressed that "[t]he Fourth Amendment tolerates only reasonable mistakes," id. at 539 (emphasis in original), and the concurrence explained that the laws that might be amenable to such mistakes of law are "genuinely ambiguous" and "pose[ ] a quite difficult question of interpretation" that involves "hard interpretive work," id. at 541-42 (Kagan, J., concurring). One panel of our court has held that "an officer's mistake of law may be reasonable if the law is ambiguous (reasonable minds could differ on the interpretation) and it has never been previously construed by the relevant courts." United States v. Cunningham, 630 F. App'x 873, 876-77 (10th Cir. 2015) (unpublished) (emphasis added).
However, as detailed above, section 30-22-1(D) has been interpreted several times by the New Mexico Court of Appeals. The only potentially ambiguous language in section 30-22-1(D) is the phrase "resisting or abusing," and the New Mexico Court of *1132 Appeals has clarified that language by explaining that "resisting or abusing" can refer to an arrestee's overt physical act, use of fighting words, or refusal to obey lawful police commands. See Diaz, 908 P.2d at 259-62 ; Wade, 667 P.2d at 460. Given the on-point case law that exists, it was error for the district court to apply the rule from Heien at all. Moreover, even if Heien is applicable here, it was not objectively reasonable for Office Dollar to think Romero's conduct constituted "resisting or abusing" in this case. As explained above, Romero was far more compliant than the defendants in Diaz, Smith, and Storey. Therefore, we reverse the district court's alternate conclusion that Officer Dollar committed a reasonable mistake of law.
III. CONCLUSION
For the foregoing reasons, we REVERSE the district court's denial of Romero's motion to suppress and REMAND this case to the district court for further proceedings.

The descriptions in brackets come from our observation of the video evidence filed as Supp. R. Vol. I. The verbal exchange is identical to that noted in the district court's opinion.

Officer Dollar: Police Department. Hey, what's up man? How are you?
Romero: Pretty good.
Officer Dollar: What's going on?
Romero: I'm getting some water and charging my phone.
Officer Dollar: You don't have any weapons or anything on you, do you?
Romero: No, I got a --.