**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**May 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ALBERT JEROME BUSTILLOS,

    Plaintiff - Appellant,

v.

CITY OF CARLSBAD, NEW MEXICO
and SERGEANT DANIEL VASQUEZ of
CARLSBAD POLICE DEPARTMENT,

    Defendants - Appellees.

No. 21-2129
(D.C. No. 2:20-CV-01336-JB-GJF)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BRISCOE**, and **MURPHY**, Circuit Judges.
_____

Pro se plaintiff-appellant Albert Jerome Bustillos—also known as "Stray Dog the

Exposer"—is a YouTuber who films and posts police encounters online.[1]  He appeals the

district court's dismissal of his 42 U.S.C. § 1983 complaint against the City of Carlsbad,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

[1] "Although we liberally construe pro se filings, we do not assume the role of
advocate."  *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (internal quotation
omitted).

New Mexico, and Officer Daniel Vasquez, a police officer employed by the City.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

I

**A.    Factual Background**

On April 10, 2019, officers of the Carlsbad Police Department responded to calls that a woman with an "altered mental status" was running in and out of traffic. The officers found the woman at Jefferson Montessori Academy in Carlsbad, New Mexico. The officers' encounter with the woman, and eventually Bustillos, was captured on the body cameras of multiple officers, including Officer Vasquez ("Vasquez Video") and Officer Devon Stinson ("Stinson Video"). Bustillos also captured the encounter on his cell phone.

Officer Stinson was the first to arrive at the scene and attempt talking with the woman. Stinson Video, at 0:00–1:29.[2] Officer Vasquez and Bustillos arrived a few minutes later and began walking toward the woman while Officer Stinson was attempting to calm her down. *Id.* at 1:20–1:55; Vasquez Video, at 0:00–1:00. As Officer Vasquez and Bustillos were walking toward the woman, Officer Stinson extended his left arm in their general direction, with his palm out, and said, "You're scaring her off, can you guys stand back please." Stinson Video, at 1:25–1:30; Vasquez Video, at 0:15–1:20. In addition, while walking next to Bustillos and toward the scene, Officer Vasquez asked Bustillos twice to "stay over there." Vasquez Video, at 0:15–0:30.

---

[2] The timestamps refer to the time elapsed since the start of the recordings.

The officers attempted to calm down the woman—who was experiencing some sort of severe "altered mental status"—as they waited for medical help to arrive. *See generally* Stinson Video. After several minutes, the woman became more agitated and started running from the officers while yelling "pedophile." Stinson Video, at 9:00–9:26. Officer Stinson chased after her, assisted her in sitting down, and repeatedly told her that "it's okay." *Id.* at 9:20–9:30. The woman, however, remained agitated, and she pointed toward Bustillos and screamed, "There's a guy right there!" *Id.* at 9:24–9:30. She then repeatedly yelled in Bustillos's direction "you can't take my freedom" and "fuck you, bitch," among other things. *Id.* at 9:30–10:20. As the officers handcuffed her to prevent her from running back into traffic, she said, "There's people scaring me, it's wrong . . . it's scaring me . . . I already got beat up." *Id.*

After the woman first screamed "there's a guy right there!," Officer Vasquez began walking toward Bustillos and repeatedly ordered him to leave the scene:

> Okay you're scaring her. You need to go now. You're going to make her worse . . . you need to go. I'm not going to ask you again—you need to go. You're going to make her mental state worse. You're going to make her status worse, now go, or you can go to jail—you decide.

Vasquez Video, at 8:15–8:37. Bustillos refused to leave and instead told Officer Vasquez that he was "far away" and that the woman's mental status was "not [Bustillos's] problem" because he was "on public property." *Id.* at 8:36–8:45.

Officer Vasquez repeated his commands for Bustillos to leave: "I'm going to ask you one more time. You're interfering with this investigation. Now you need to go. . . . One more time—do you want to go to jail?" *Id.* at 8:45–8:51. Bustillos responded, "Do

3

you want another federal lawsuit? . . . I got one pending already.  Do you know who I

am?"  *Id.* at 8:50–9:03.  Officer Vasquez warned Bustillos again:

> Go.  You are engaging in her mental status.  She just called you a
> pedophile.  Go. . . . I don't need her to get worse. . . . Have some respect for
> her mental status . . . . Go stand at [a nearby gate] so you don't engage her
> mental status anymore.

*Id.* at 9:02–9:27.  Bustillos refused and instead stated that "not everybody likes us

recording them," to which Officer Vasquez responded, "I don't care about you recording,

but you're not going to engage her mental status."  *Id.*  Bustillos continued to argue with

Officer Vasquez and disregard his repeated orders.  *Id.* at 9:27–9:38.

Officer Vasquez then ordered Bustillos multiple times to "give me your I.D."  *Id.*

at 9:38–9:44.  Bustillos remained argumentative and refused to identify himself unless

Officer Vasquez first provided him with a "reasonable articulable suspicion" of a crime.

*Id.* at 9:38–9:47.  At this point, Officer Vasquez placed Bustillos in handcuffs.  *Id.* at

9:48–10:02.  While Bustillos was in handcuffs, Officer Vasquez attempted to explain to

Bustillos why he was handcuffed, but Bustillos kept interrupting him.  *Id.* at 10:00–15:15.

Officer Vasquez eventually was able to explain that he "let [Bustillos] record as long as

[he] wanted to record," but by engaging with the woman's mental status, Bustillos was

interfering with a police investigation and refusing to comply with Officer Vasquez's

order to leave the scene and then provide his identification.  *Id.*

After Officer Vasquez confirmed that Bustillos would indeed go to jail if he

continued to refuse to provide his I.D., Bustillos provided his identification.  *Id.*  Officer

Vasquez removed the handcuffs, which had been on for just under eight minutes.  *Id.* at

15:15–17:35.  Officer Vasquez also gave Bustillos back his cellphone, which Officer Vasquez had removed from Bustillos's hand while placing him in handcuffs.  *Id.* at 8:15–10:02, 17:35–18:03.  Officer Vasquez noted that the phone was still recording.  *Id.* at 17:35–18:03.

B.      **Procedural Background**

On October 15, 2020, Bustillos sued the City of Carlsbad and Officer Vasquez in New Mexico state court, alleging that Officer Vasquez falsely arrested/imprisoned him and unlawfully detained him in violation of the Fourth and First Amendments and state law.  ROA, at 9–13.  The City and Officer Vasquez removed the case to the United States District Court for the District of New Mexico and then moved to dismiss, or alternatively moved for summary judgment and asserted qualified immunity.  *Id.* at 6–28, 39–53.

On referral, the magistrate judge issued Proposed Findings and a Recommended Disposition ("PFRD").  *Id.* at 56–84.  The PFRD recommended that (1) the court hold that Bustillos "ha[d] not shown that a reasonable jury could find that Defendant Vasquez or Defendant City of Carlsbad violated [Bustillos's] constitutional rights, clearly established or otherwise" and, even assuming Officer Vasquez had violated Bustillos's Fourth or First Amendment rights, Officer Vasquez "would still be entitled to qualified immunity"; (2) the court dismiss the federal claims with prejudice; and (3) the court decline to exercise supplemental jurisdiction over Bustillos's state law claims, dismissing them without prejudice.  *Id.* at 81–83.  Bustillos objected.  *Id.* at 85–112.

On de novo review, the district court overruled Bustillos's objections, adopted the PFRD in its entirety, and granted the City and Officer Vasquez's motion.  *Id.* at 113–24.

It then dismissed Bustillos's federal claims with prejudice and dismissed the state law claims without prejudice. *Id.* at 123–24. The district court entered judgment by separate order.[3] *Id.* at 127.

Bustillos now appeals.

## II

Bustillos on appeal argues that (1) the district court erred in determining that Officer Vasquez possessed reasonable suspicion or probable cause to detain or arrest Bustillos and compel him to identify himself and (2) the district court erred in determining that Officer Vasquez did not violate Bustillos's constitutional rights because Bustillos had a clearly established First Amendment right to film the police "at the time in question and from the place in question."[4] The threshold issue for Bustillos's

---

[3] We note that while the final judgment generally states that "this case is dismissed with prejudice" and does not differentiate between Bustillos's federal claims and his state law claims, the district court's memorandum opinion and order adopted the PFRD in its entirety and explicitly ordered that Bustillos's federal claims were dismissed with prejudice and his state law claims were dismissed without prejudice. ROA, at 83, 113, 123–24, 127.

[4] Bustillos on appeal also presents two issues that are not in his complaint or any of his motions in the district court: (1) Officer Vasquez violated his First Amendment right of freedom of association "to lawfully associate with and engage the unstable woman" and (2) Officer Vasquez violated his Fourteenth Amendment right "of liberty to freedom of movement at the time and place in question." Aplt. Br. at 8–11. Because Bustillos did not present these issues to the district court, they are not properly preserved for this appeal. Even if these issues were properly before us, we note that they have no merit or applicability. As for the freedom of association claim, the district court correctly characterized Bustillos's First Amendment claim as one for retaliatory arrest. *See* ROA, at 119–21. As for any Fourteenth Amendment liberty of movement claim, the only time that Bustillos's movement was restricted was the less than eight minutes that he was in handcuffs, and as will be discussed, Officer Vasquez had probable cause to handcuff Bustillos because of Bustillos's own conduct and his effect on the woman's mental status.

challenges is whether Officer Vasquez violated his Fourth or First amendment rights.  If Bustillos cannot show a constitutional violation, then Officer Vasquez is entitled to qualified immunity and Bustillos's federal claims against Officer Vasquez and the City fail.

Under the qualified immunity doctrine, government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Accordingly, "when a defendant raises a qualified immunity defense in a Rule 12(b)(6) motion [or a Rule 56 motion], the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *A.N. by & through Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (internal quotations omitted).  We review the district court's judgment based on qualified immunity de novo.  *See McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018).

We conclude that Officer Vasquez did not violate Bustillos's constitutional rights and therefore is entitled to qualified immunity.  We will address Bustillos's contentions in turn.

A.    **Fourth Amendment Violation**

Bustillos first argues that Officer Vasquez did not have reasonable suspicion or probable cause to detain or arrest him and compel him to identify himself.  Aplt. Br. at

11–13. The district court found that Officer Vasquez had both reasonable suspicion to stop Bustillos and request his I.D. and then probable cause to believe that he concealed his identity. ROA, at 77–80 (citing *Mocek v. City of Albuquerque*, 813 F.3d 912, 922–23 (10th Cir. 2015)). Bustillos's argument regarding his Fourth Amendment claim focuses solely on the fact that he had the right to record the officers' encounter with the woman that day. Aplt. Br. at 11–13. We will assume for the purposes of our analysis, as the district court did, that Officer Vasquez's handcuffing of Bustillos "enter[ed] the realm of an arrest." *Cortez v. McCauley*, 478 F.3d 1108, 1116–17 (10th Cir. 2007); *see also* ROA, at 77 n.11.

As a general matter, a warrantless arrest is consistent with the Fourth Amendment "when there is probable cause to believe the arrestee has committed a crime." *Mocek*, 813 F.3d at 922. In New Mexico, resisting or abusing a peace officer in the lawful discharge of his duties, including refusing to obey lawful police commands, is a misdemeanor crime. N.M. Stat. Ann. § 30-22-1(D); *see also United States v. Romero*, 935 F.3d 1124, 1128 (10th Cir. 2019). It also is a misdemeanor to "conceal[] one's true name or identity . . . with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty." N.M. Stat. Ann. § 30-22-3; *see also Mocek*, 813 F.3d at 922. If an investigative stop is supported by reasonable suspicion of a predicate, underlying crime, "it is well established that an officer may ask a suspect to identify himself" and "[the] state may criminalize the suspect's failure to comply." *Mocek*, 813 F.3d at 922

8

(internal quotation marks omitted) (citing *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 186–88 (2004)).

Consequently, to determine whether a plaintiff's arrest for concealing his identity comported with the Fourth Amendment, we "must first consider whether there was reasonable suspicion to stop him and request his identity." *Id.* In doing so, we look to the "totality of the circumstances" to determine whether there was reasonable suspicion of wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002). The question is "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (internal quotation marks omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)).

If there was reasonable suspicion, we "next must determine whether probable cause existed to believe he concealed his identity." *Mocek*, 813 F.3d at 922–23. Probable cause exists "if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (internal quotation marks omitted). Regardless of whether a seizure is deemed to be an arrest or investigative detention, a finding of probable cause for an arrest incorporates the "less demanding" finding of reasonable suspicion for an investigative detention. *Kansas v. Glover*, 140 S. Ct. 1183, 1187–88 (2020).

We conclude that Officer Vasquez did not violate Bustillos's Fourth Amendment rights because Officer Vasquez had reasonable suspicion and probable cause to handcuff Bustillos. Bustillos's challenge focuses on his right to record the officers' encounter with the woman that day, but his argument misses the mark. The issue was not that Bustillos was recording the encounter—it was that he refused to comply with the officers' lawful commands to leave the scene and provide his identification. Viewing the facts in the light most favorable to Bustillos, Officer Vasquez was in the lawful discharge of his duties when he and the other officers responded to calls regarding the woman with an "altered mental status" running in and out of traffic. Throughout the encounter with the woman, the officers told Bustillos multiple times to stay back because they were concerned that his presence was affecting her mental state and worsening the situation. But Bustillos blatantly refused to comply with Officer Vasquez's repeated orders to leave the scene. Officer Vasquez therefore had not just reasonable suspicion but also probable cause to believe that Bustillos had committed the crime of refusing to obey lawful police commands. N.M. Stat. Ann. § 30-22-1(D); *see also Mocek*, 813 F.3d at 922–23.

Officer Vasquez also had probable cause to believe that Bustillos committed the additional crime of "concealing [his] true name or identity." N.M. Stat. Ann. § 30-22-3. After Bustillos refused to leave the scene, Officer Vasquez lawfully ordered Bustillos multiple times to provide his I.D., but Bustillos refused to identify himself. Officer Vazquez therefore had probable cause to believe Bustillos had committed two crimes: refusing to obey lawful police commands and concealing his identity. In terms of

10

probable cause, Bustillos's arrest "comported with the Fourth Amendment." *Mocek*, 813 F.3d at 922.

Because Bustillos has not shown a genuine factual dispute regarding reasonable suspicion or probable cause, Officer Vasquez is entitled to qualified immunity on Bustillos's Fourth Amendment claim.

## B.    First Amendment Violation

Bustillos next argues that the district court erred in determining Officer Vasquez did not violate Bustillos's constitutional rights because he had a clearly established First Amendment right to film the police "at the time in question and from the place in question." Aplt. Br. at 1–8.  The district court properly construed Bustillos's First Amendment claim as one for retaliatory arrest because Bustillos asserted that Officer Vasquez illegally arrested him for recording the police.  ROA, at 66–68, 120.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks omitted) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  Bustillos must establish three elements to show First Amendment retaliation: (1) he "was engaged in constitutionally protected activity"; (2) Officer Vasquez's actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Officer Vasquez's adverse action "was substantially motivated as a response to [his] exercise of constitutionally protected conduct." *Hinkle v. Beckham Cty. Bd. Of Cty. Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020) (internal quotation marks omitted) (citing *Worrell v.*

11

*Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).  In addition to the three *Worrell* elements, a First Amendment retaliation claim based on a false arrest requires a separate "'threshold showing'—generally, a plaintiff must show a false arrest." *Id.* at 1227.  In other words, Bustillos must show a lack of probable cause.

As discussed above, Officer Vasquez had probable cause for Bustillos's arrest, which defeats Bustillos's retaliatory arrest claim.  Although Bustillos professes a desire to serve the public by filming police encounters, his desire to film from a particular location does not authorize him to break the law.  Bustillos correctly observes that the Constitution gives him the rights to free speech and protection from unreasonable seizures.  Aplt. Br. at 1–8; Aplt. Reply Br. at 1–11.  But this same Constitution also empowers a state—without violating these rights—to (1) criminalize Bustillos's refusal to obey lawful police commands, (2) criminalize his subsequent concealment of his identity, and (3) arrest him upon probable cause that he committed either or both crimes. *See Nieves*, 139 S. Ct. 1722–27; *Romero*, 935 F.3d at 1128–31.  In sum, Officer Vasquez is entitled to qualified immunity on Bustillos's First Amendment claim because there is no genuine factual dispute regarding probable cause.

Because Bustillos failed to demonstrate that Officer Vasquez violated his constitutional rights, Bustillos fails to meet the first prong of the qualified immunity analysis, and we need not address the second prong of the qualified immunity analysis regarding clearly established law or Bustillos's claim that the City is liable.  We therefore conclude that the district court correctly entered judgment in favor of Officer Vasquez and the City.

## III

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Bustillos's federal claims with prejudice and his state claims without prejudice.

Entered for the Court


Mary Beck Briscoe
Circuit Judge